**Keith Ketterling,** OSB No. 913368
**Steven C. Berman**, OSB No. 951769
**Megan K. Houlihan**, OSB No. 161273
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840
Email:         kketterling@stollberne.com
               sberman@stollberne.com
               mhoulihan@stollberne.com

*Special Assistant Attorneys General*
*for the State of Oregon, Ellen Rosenblum,*
*and Andrew Stolfi*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| OREGON BANKERS ASSOCIATION, LEWIS & CLARK BANK, BANK OF EASTERN OREGON, AND PEOPLE'S BANK OF COMMERCE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON, ELLEN ROSENBLUM, in her official capacity as the Attorney General of the State of Oregon, and ANDREW STOLFI, in his official capacity as the Director of the Oregon Department of Consumer and Business Services,<br><br>Defendants. | Case No. 6:20-cv-01375-AA<br><br>DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS<br><br>**ORAL ARGUMENT REQUESTED** |

Page i - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

# TABLE OF CONTENTS

CERTIFICATION OF COMPLIANCE WITH LR 7-1(A)(1) ........................................................1

MOTION ........................................................................................................................................1

MEMORANDUM OF LAW .........................................................................................................1

    I.       INTRODUCTION ........................................................................................1

    II.     BACKGROUND .........................................................................................2

          A.     The Impact of COVID-19 in Oregon .......................................................2

          B.     The Legislature Enacts HB 4204 to Provide Temporary Protection to Homeowners and Small Businesses .......................................................3

          C.     Plaintiffs' Lawsuit ...................................................................................6

    III.    STANDARDS .............................................................................................7

    IV.   ARGUMENT ..............................................................................................8

          A.     The Claims Against the State Should Be Dismissed Because It Is Immune from Suit Under the Eleventh Amendment ...................................8

          B.     To the Extent Plaintiffs Assert a Takings Clause Claim, the Attorney General and the Director Are Immune Under the Eleventh Amendment ...............................................................................9

          C.     Plaintiffs' Claim Regarding the Notice Requirement in Subsection (9) Is Moot ............................................................................................11

          D.    OBA Does Not Have Standing .............................................................12

          E.     Lewis & Clark Bank and People's Bank of Commerce Do Not Have Standing to Bring Their Third Claim for Relief .............................19

    V.     CONCLUSION.........................................................................................20

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Kujok*,
   158 F. Supp. 3d 1012 (E.D. Cal. 2016) ...............................................................8

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
   126 F.3d 1118 (9th Cir. 1997) ...........................................................................11

*Ass'n of Christian Sch. Int'l v. Stearns*,
   678 F. Supp. 2d 980 (C.D. Cal. 2008).........................................................13, 18

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ...........................................................................14

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
   517 U.S. 25 (1996) .............................................................................................16

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*
   941 F.3d 1195 (9th Cir. 2019) ...........................................................................11

*Bernhardt v. Cnty. of Los Angeles*
   279 F.3d 862 (9th Cir. 2002) .............................................................................11

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*
   526 U.S. 687 (1999) ...........................................................................................10

*Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*,
   365 F. Supp. 2d 1146 (D. Nev. 2005) ................................................................14

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ...........................................................................................20

*Davis v. Johnson*,
   359 F. Supp. 3d 831 (N.D. Cal. 2019)................................................................15

*Delong Corp. v. Or. State Highway Comm'n*,
   343 F.2d 911 (9th Cir. 1965) ...............................................................................8

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
   438 U.S. 59 (1978) .............................................................................................12

*E. Enterprises v. Apfel*,
   524 U.S. 498 (1998) ...........................................................................................17

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ...............................................................................................10

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................................9, 10

*Foti v. City of Menlo Park,*
    146 F.3d 629 (9th Cir. 1998) ...............................................................................15

*Free Speech Coal., Inc. v. Attorney Gen. U.S.,*
    787 F.3d 142 (3d Cir. 2015) ................................................................................18

*Free Speech Coal., Inc. v. Attorney Gen. U.S.,*
    825 F.3d 149 (3d Cir. 2016) ................................................................................18

*Gen. Motors Corp. v. Romein,*
    503 U.S. 181 (1992) .............................................................................................16

*Hunt v. Wash. State Apple Adver. Comm'n,*
    432 U.S. 333 (1977) .............................................................................................13

*Knick v. Township of Scott, Penn.,*
    U.S., 139 S. Ct. 2162, 2171 (2019) ....................................................................10

*Ladd v. Marchbanks,*
    2020 WL 4882885 (6th Cir. Aug. 20, 2020) .......................................................10

*Lake Tahoe v. Tahoe Regional Planning Agency*, 365 F. Supp. 2d 1146 ....................................14

*Lazar v. Kroncke,*
    862 F.3d 1186 (9th Cir. 2017) .............................................................................16

*Lingle v. Chevron U.S.A. Inc.*
    544 U.S. 528, 540 (2005) ....................................................................................17

*McIntyre v. Bayer,*
    339 F.3d 1097 (9th Cir. 2003) .............................................................................17

*Nat'l Org. for Women, Inc. v. Scheidler,*
    510 U.S. 249 (1994) .............................................................................................13

*New York State Nat. Org. for Women v. Pataki,*
    261 F.3d 156 n.4 (2d Cir. 2001).......................................................................18

*Oregon Advocacy Center v. Mink,*
    322 F.3d 1101 ......................................................................................................12

Page iv - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

*Parent/Prof'l Advocacy League v. City of Springfield, Mass.*,
   934 F.3d 13 (1st Cir. 2019) ................................................................18

*Pennhurst State School and Hospital v. Halderman*
   465 U.S. 89 (1984) ...........................................................................8

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1993) .........................................................................9

*Rent Stabilization Ass'n of City of New York v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993) .................................................... 14, 17, 18

*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*
   581 F.3d 1169 (9th Cir. 2009) ...........................................................8

*Sato v. Orange Cnty. Dep't of Educ.*
   861 F.3d 923 n.2 (9th Cir. 2017).........................................................7

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) ...........................................................................8

*Seven Up Pete Venture v. Schweitzer*
   523 F.3d 948 (9th Cir. 2008) ................................... 9, 10, 11, 12

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1282 (9th Cir. 2014) .........................................................19

*Sylvia Landfield Tr. v. City of Los Angeles*,
   729 F.3d 1189 (9th Cir. 2013) .........................................................17

*Todd v. Oregon*
   2014 WL 1217964 (D. Or. Mar. 19, 2014)........................................8

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) .......................................................... 12, 13, 18

*WildEarth Guardians v. U.S. Dep't of Agric.*,
   795 F.3d 1148 (9th Cir. 2015) .........................................................12

*Will v. Mich. Dep't. of State Police*,
   491 U.S. 58 (1989) ...........................................................................9

## Statutes

12 U.S.C. § 1465(a) ..............................................................................16

12 U.S.C. § 25b .....................................................................................16

Page v - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

U.S. Constitution., Amendment XI................................................................................8

**Other Authorities**

Executive Order 20-03 ...............................................................................................3

Executive Order 20-11 ...............................................................................................3

Executive Order 20-13 ...............................................................................................3

Executive Order 20-37 ............................................................................................3, 6

Oregon House Bill 4204 (2020)..........................................................................passim

**Rules**

FRCP 12(b)(1) ...........................................................................................................7

FRCP 12(h)(3) ...........................................................................................................7

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## CERTIFICATION OF COMPLIANCE WITH LR 7-1(A)(1)

Counsel for Defendants certify that on September 28, 2020, counsel for the parties

conferred by telephone and made a good-faith effort to resolve the disputes raised in this motion.

Despite the parties' good-faith efforts, the parties have been unable to resolve those disputes.

## MOTION

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), Defendants move as follows:

- Defendant the State of Oregon moves, pursuant to the Eleventh Amendment of the Constitution of the United States, to dismiss all claims against it;

- Defendants Ellen Rosenblum, the Attorney General of the State of Oregon, and Andrew Stolfi, Director of the Oregon Department of Consumer and Business Services, move, also pursuant to the Eleventh Amendment, to dismiss Plaintiffs' third claim for relief to the extent Plaintiffs bring this claim under the Takings Clause of the United States Constitution;

- All Defendants move to dismiss Plaintiffs' claim relating to subsection (9) of Oregon House Bill 4204 (2020) as moot;

- All Defendants move to dismiss Plaintiff the Oregon Business Association for lack of standing; and,

- All Defendants move to dismiss Plaintiffs Lewis & Clark Bank and People's Bank of Commerce's third claim for relief for lack of standing.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Oregon Legislature passed House Bill 4204 during a special session this summer.

HB 4204 places *temporary* limits on certain lenders' ability to foreclose or impose penalties on

certain borrowers for late payments.  HB 4204 provides stopgap, emergency protection to

vulnerable homeowners and small businesses during the economic crisis caused by a global

pandemic.  Plaintiffs—three Oregon chartered banks and a trade association—seek declaratory

Page 1 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

and injunctive relief from the Court against two provisions of HB 4204.  First, Plaintiffs seek to enjoin application of subsection 1(3) of HB 4204 – the provision that, among other things, temporarily prohibits lenders from charging fees or penalties to borrowers for late payment or non-payment under certain circumstances.  Second, Defendants seek to enjoin application of subsection 1(9), which required lenders to provide notice to borrowers of their rights under HB 4204 by August 30, 2020.  Plaintiffs also seek relief for what they characterize as "retroactive" application of HB 4204, alleging unconstitutional takings and deprivation of due process.

Plaintiffs' complaint suffers from significant jurisdictional defects.  The State of Oregon ("State") is not a proper defendant in federal court under the doctrine of Eleventh Amendment sovereign immunity.  To the extent Plaintiffs allege "takings" against Ellen Rosenblum, the Attorney General of the State of Oregon, ("Attorney General") and Andrew Stolfi, Director of the Oregon Department of Consumer and Business Services, ("Director") those claims are similarly not properly before this Court.  Plaintiffs' claim regarding the notice provision in subsection 1(9) of HB 4204 is moot because the notice deadline has passed and, to the extent any plaintiff sent notice, there is no relief that the Court can grant.  Finally, the Oregon Bankers Association ("OBA") lacks standing to pursue all its claims, and Lewis & Clark Bank and People's Bank of Commerce similarly lack standing to pursue their third claim for relief.

## II.    BACKGROUND

### A.  The Impact of COVID-19 in Oregon

The global pandemic of the novel infectious coronavirus ("COVID-19") is a generation-defining crisis.  It threatens the lives, health, and economic wellbeing of people around the world, including many people here in Oregon.  To protect the well-being of Oregonians and Oregon small businesses, both the Governor and the Legislature acted swiftly.

Page 2 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

On March 8, 2020, Governor Brown, declared a state of emergency due to the public health threat posed by COVID-19.  *See* Executive Order ("EO") 20-03.[1]  In the following months, Governor Brown took decisive action to slow the spread of COVID-19 in Oregon and to mitigate the health and economic impacts of the global pandemic.  These actions included placing limitations on social gatherings, closing schools, banning on-site consumption of food and drink at restaurants, and ordering the postponement of nonurgent medical procedures to conserve personal protective equipment and hospital beds.  *See* EO 20-37 (summarizing Governor Brown's response to the pandemic).

Governor Brown was particularly concerned with ensuring that Oregonians stayed at home to the greatest extent possible to limit transmission of the virus.  On March 23, 2020, the Governor ordered Oregonians to "Stay Home, Save Lives," directing people to stay at home when possible, closing specified retail businesses, and requiring social distancing measures.  *Id.* at 1.  To ensure that tenants could remain at home, Governor Brown put in place eviction protections.  *See* EO 20-11 (prohibiting law enforcement officers from enforcing residential tenant eviction notices and orders); EO 20-13 (ordering a temporary moratorium on evictions based on nonpayment of rent).

### B.  The Legislature Enacts HB 4204 to Provide Temporary Protection to Homeowners and Small Businesses

After taking immediate action, the Governor called a special session of the legislature to adopt laws to help address the impact of the pandemic.  As pertinent here, the Oregon Legislature took steps to ensure that Oregonians have access to housing where they can continue

---

[1]  Governor Brown's executive orders are available at https://www.oregon.gov/gov /admin/pages/executive-orders.aspx.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

to stay home and save lives during the COVID-19 crisis and to protect small businesses during the economic downturn.  On June 26, 2020, the Oregon legislature passed HB 4204 in its first special session of 2020.[2]  HB 4204 institutes a moratorium on certain lender actions and foreclosures.  Governor Brown signed HB 4204 into law on June 30, 2020.  Its stated purpose is "the immediate preservation of the public peace, health and safety."  *Id.*

HB 4204 recognizes a temporary "emergency period."  That emergency period "begins on March 8, 2020, and ends on September 30, 2020, except that the Governor may specify a later date by executive order not later than 30 days before September 30, 2020."  HB 4204 § 1(2)(b).  During the emergency period, if a borrower notifies a lender that the borrower will not be able to make payments on a mortgage, land sale contract, or other security interest secured by real property or personal property used as a residence, the lender may not treat nonpayment as a default.  § 1(3)(a).[3]  Instead, either the lender must (1) agree to modify, defer, or otherwise mitigate the loan, including by agreeing to a foreclosure avoidance measure; or (2) defer from collecting the periodic installment payment during the emergency period and permit the borrower to pay any amount the borrower owes to the lender as a result of the deferral when the

---

[2] The history of HB 4204 is available at https://olis.oregonlegislature.gov/liz/2020S1/Measures/Overview/HB4204.

[3] HB 4204 defines "borrower" as "a mortgagor of real property, a grantor, as defined in ORS 86.705, a purchaser in a land sale contract, a person that enters into a retail installment contract with, or gives a security interest to, a lender for subject property and a successor in interest to the mortgagor, grantor, purchaser or person."  § 1(2)(a).

HB 4204 defines "lender" as a beneficiary or trustee, both as defined in ORS 86.705, a mortgagee, as defined in ORS 87.005, a seller in a land sale contract, a licensee, as defined in ORS 86A.303, a retail seller, as defined in ORS 83.010, in a retail installment contract for subject property or an agent, affiliate or employee of a beneficiary, trustee, mortgagee, seller, retail seller or licensee."  § 1(2)(f).

Page 4 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

full loan amount is due. § 1(3)(a)(A)– (B). The borrower does not need to provide notice more than once, but the borrower must attest that nonpayment is a result of lost income related to the COVID-19 pandemic. § 1(3)(c). In the case of commercial property or residential property with more than four dwelling units, the borrowers' notification must include financial statements or other evidence that demonstrates a loss of income related to the COVID-19 pandemic and must disclose any funds the borrower received from the United States Small Business Administration under the Paycheck Protection Program. *Id.*

For obligations subject to HB 2404, a lender also is prevented from:

- Imposing or collecting charges, fees, penalties, attorney fees, or other amounts that the lender might otherwise have imposed or collected from a borrower for nonpayment;

- Imposing a default rate of interest that the lender might otherwise have imposed or collected from the borrower for nonpayment;

- Treating in any manner the borrower's nonpayment as an ineligibility for a foreclosure avoidance measure;

- Requiring or charging for an inspection, appraisal, or a broker opinion of value, not otherwise permitted in the absence of a default;

- Initiating cash management not already in existence before the effective date of HB 4204;

- Implementing lockbox procedures not already in existence before the effective date of HB 4204;

- Taking control of the operating revenue from real property secured by the financing document unless the control was established before the effective date of HB 4204; or

- Declaring a default based on the borrower's failure to meet financial covenants due to inadequate operating revenue resulting from the COVID-19 pandemic.

§ 1(3)(d)(A)–(H).

Page 5 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

A lender also may not bring an action or suit for foreclosure or enforce any forfeiture remedy unless certain conditions are met. § 1(4)(a)–(d), (10). If a lender initiated a foreclosure before the effective date of HB 4204, the deadline for foreclosure is tolled during the emergency period. § 1(5). During the emergency period, courts may not enter judgments of foreclosure. § 1 (6). Nor may any trustee's sale or execution sale occur. § 1(7).

HB 4204 confers a private right of action on any borrower who suffers an ascertainable loss of money or property because a lender took an action prohibited under subsection (3). § 1(8). A borrower who prevails in the action may recover court costs and attorney fees. *Id.* By August 30, 2020, every lender doing business in Oregon was required to give their borrowers written notice by mail of the borrowers' rights under the statute. § 1(9).

HB 4204 is a temporary measure. It provides that it automatically will be repealed 90 days after the expiration of the emergency period. § 2. By Executive Order, on August 31, 2020, Governor Brown extended the emergency period to December 31, 2020. EO 20-37. Unless Governor Brown extends or terminates EO 20-37, HB 4204 will expire in the new year.

COVID-19 has continued to threaten the lives and health of Oregonians across the state. As of August 31, 2020, there were at least 26,713 cases and 459 deaths in Oregon resulting from the virus. Ensuring that shelter remains available to Oregonians continues to be a critical part of combating the effects of COVID-19 and limiting the virus's spread. Additionally, as a result of the pandemic, small business owners are struggling to pay their mortgages. HB 4204 provides these Oregonians with some temporary protection.

### C. Plaintiffs' Lawsuit

On August 13, 2020—six weeks after HB 4204 went into effect—Plaintiffs filed this lawsuit against the State, the Attorney General, and the Director. The lawsuit seeks to enjoin

Page 6 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

enforcement of HB 4204's subsection (3), which temporarily limits lenders from defaulting on borrowers or imposing penalties for late payment, and subsection (9), which required lenders to provide certain notice to borrowers by August 30, 2020.  Plaintiffs also seek to have these provisions declared unconstitutional under the Supremacy and Contracts Clauses of the United States Constitution.  Finally, Plaintiffs demand a determination that either (1) HB 4204 does not apply retroactively; or (2) if it does, retroactive application violates the Due Process and Takings Clauses of the U.S. Constitution and is therefore enjoined.  Plaintiffs do not challenge subsections (4) through (7) concerning foreclosures.

Plaintiffs' claims suffer from threshold deficiencies that require dismissal at this stage of litigation.  Plaintiffs have failed to account for the State's sovereign immunity and that their claims regarding notice are moot.  The Court lacks subject matter jurisdiction to consider these defective claims.  Accordingly, Defendants respectfully ask the Court to dismiss them.  Moreover, Plaintiff OBA lacks standing, and Plaintiffs Bank of Eastern Oregon and People's Bank of Commerce lack standing to pursue their third claim for relief.

## III.  STANDARDS

FRCP 12(b)(1) allows a defendant to move to dismiss a case for "lack of subject-matter jurisdiction."  FRCP 12(b)(1).  When a defendant correctly identifies a jurisdictional defect, "the court must dismiss the action."  FRCP 12(h)(3).  A defendant may raise the issues of sovereign immunity, mootness, and standing through a motion to dismiss under FRCP 12(b)(1).  *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion."); *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172–73

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(9th Cir. 2009) (mootness); *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1017 (E.D. Cal. 2016) (standing).

## IV.    ARGUMENT

### A.    The Claims Against the State Should Be Dismissed Because It Is Immune from Suit Under the Eleventh Amendment

The Eleventh Amendment articulates the doctrine of sovereign immunity.  It provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI.  The Supreme Court has held that, despite the apparent limited terms of the Eleventh Amendment's text, a federal court also may not entertain a suit brought by citizens against their own states. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98 (1984).  The Supreme Court further has interpreted the Eleventh Amendment's protection as extending to suits invoking federal question jurisdiction. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996).  Although a state may waive its sovereign immunity by consenting to suit in federal court, the waiver must "be unequivocally expressed." *Pennhurst*, 465 U.S. at 99.

Plaintiffs have sued the State.  The State has not consented to suit in federal court for federal constitutional claims. *See Delong Corp. v. Or. State Highway Comm'n*, 343 F.2d 911, 912 (9th Cir. 1965) (holding "that Oregon has not consented to be sued in federal court or otherwise waived its immunity under the Eleventh Amendment"); *Todd v. Oregon*, 2014 WL 1217964, at *4 (D. Or. Mar. 19, 2014) (concluding that the State had not waived sovereign immunity for federal constitutional claims).  Accordingly, as required by the Eleventh Amendment, the Court should dismiss all Plaintiffs' claims against the State.

Page 8 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

**B.      To the Extent Plaintiffs Assert a Takings Clause Claim, the Attorney General and the Director Are Immune Under the Eleventh Amendment**

The Eleventh Amendment similarly bars any takings claim against the Attorney General and the Director.[4]  The Eleventh Amendment's prohibition against federal court jurisdiction over suits by private parties against an unconsenting state is "a bit less absolute . . . where state officials, instead of the State itself, are the subjects of suit."  *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008).  "Generally speaking, 'a suit [brought] against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.'"  *Id.* (alteration in original) (quoting *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989)).  However, the Supreme Court carved out a "narrow" exception to sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908).  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (describing "narrow" exception).  If "the plaintiffs seek *prospective injunctive relief* against the state official for a violation of federal law, the Eleventh Amendment does not bar the action."  *Seven Up*, 523 F.3d at 953 (emphasis added).

Takings claims do not fall within the narrow *Ex parte Young* exception.  "The applicability of the *Ex parte Young* exception turns on whether federal takings actions are properly characterized as seeking prospective or retrospective relief."  *Seven Up*, 523 F.3d at 956.  "A remedy for past injury, *even if it purports to be an injunction against state officers requiring the future payment of money, is barred because relief 'inevitably come[s] from the*

---

[4]  If Plaintiffs do not intend to assert a claim under the Takings Clause, Defendants alternatively move, pursuant to FRCPs 12(e) and 12(f), for an order requiring Plaintiffs to make their claims more definite and certain or an order striking all allegations concerning the Takings Clause as immaterial.  (*See* Compl. ¶¶ 54, 59, 63).

Page 9 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

general revenues of the State . . . , and thus . . . resembles far more closely [a] monetary award against the State itself,' which is forbidden under the Eleventh Amendment." *Id.* (emphasis added) (alteration in original) (quoting *Edelman v. Jordan*, 415 U.S. 651, 665 (1974)).[5] In *Seven Up*, the Ninth Circuit held that a claim under the Takings Clause—even if styled as a suit for declaratory or injunctive relief—necessarily seeks "just compensation," which amounts to "damages for the unconstitutional denial of such compensation." *Id.* (alteration in original) (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999)). Accordingly, takings claims "cannot qualify as claims for prospective relief." *Id.*

In this regard, Takings Clause claims are unique because the Takings Clause is "self-executing." *Knick v. Township of Scott, Penn.*, —U.S.—, 139 S. Ct. 2162, 2171 (2019). In other words, "a property owner acquires an irrevocable right to just compensation immediately upon a taking." *Id.* at 2172. As soon as a court concludes that a taking has occurred, "the compensation remedy is required." *Id.* at 2176.

The Sixth Circuit also recently elaborated on why plaintiffs cannot use the *Ex parte Young* exception to obtain equitable relief under the Takings Clause. In *Ladd v. Marchbanks*, the court explained that if the plaintiffs could obtain a declaration that a state violated the Takings Clause by taking property without just compensation, they could use that order to require the state to pay them for its alleged taking of their property. 2020 WL 4882885, at *5 (6th Cir. Aug. 20, 2020). This "isn't a proper workaround to the States' sovereign immunity." *Id.*

---

[5] To the extent any of Plaintiffs' other claims against the Attorney General and the Director seek retroactive relief, they, too, do not come within the narrow *Ex parte Young* exception and are barred by the Eleventh Amendment. Because the claim relating to the notice requirement under HB 4204 § 1(9) seeks relief for past conduct, it falls into this category.

Page 10 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

In the case at bar, Plaintiffs assert that if HB 4204 applies retroactively, Plaintiffs are entitled to a declaration that HB 4204 violates the Takings Clause and an injunction preventing such retroactive application. (Compl. ¶ 63). They allege that "[i]f read to apply retroactively to judgments that have already been entered or execution or trustee's sales that have already been completed, HB 4204 would take vested property rights *without just compensation* in violation of the Fifth Amendment to the United States Constitution." (Compl. ¶ 60) (emphasis added). Plaintiffs' claim under the Takings Clause asks the Court to determine that Plaintiffs are entitled to "just compensation." The Ninth Circuit case *Seven Up* expressly precludes such a claim.

### C.    Plaintiffs' Claim Regarding the Notice Requirement in Subsection (9) Is Moot

"A claim is moot if it has lost its character as a present, live controversy." *Id.* (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). A claim seeking injunctive relief to prevent an event that already has passed is moot. *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) ("Where the activities sought to be enjoined already have occurred . . . the action is moot, and must be dismissed."). Additionally, "the repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal." *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019).

Lenders conducting business in Oregon had until August 30, 2020, to comply with HB 4204's notice requirement in subsection (9). That deadline has passed. Plaintiffs do not allege failure to comply with the notice provision, and some, if not all, of the Plaintiffs have complied. For the Plaintiffs, there is nothing to enjoin at this point. The statute does not provide any private right of action for noncompliance with the notice requirement. The provision has

Page 11 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

effectively expired, and no "present, live controversy" exists for the Court to adjudicate. Accordingly, Plaintiffs' claim concerning the notice requirement is moot and should be dismissed.[6]

### D.    OBA Does Not Have Standing

In addition to dismissing all claims against the State and the Takings Clause claim, the Court should dismiss OBA's remaining claims because the organization has neither individual nor associational standing.

### 1.    OBA Lacks Individual Standing

"Under Article III, Section 2 of the Constitution, federal judicial power extends only to cases or controversies, requiring 'as an irreducible minimum that there be (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Mink*, 322 F.3d at 1108 (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551 (1996)). "A plaintiff has the burden to establish that it has standing." *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015). OBA does not meet its burden to satisfy any of the three prongs for individual constitutional standing.

OBA's only allegations concerning injury are that its unidentified members have suffered harm. (Compl. ¶¶ 32–33). It does not plead, nor can it plead, any harm that it personally suffered that fairly could be traced back to Defendants or that a favorable ruling could redress. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978) ("[T]his Court

---

[6] Additionally, as discussed above, the Eleventh Amendment provides the Attorney General and Director immunity from Plaintiffs' notice claim because it seeks only retrospective relief. *Seven Up*, 523 F.3d at 956.

Page 12 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation marks omitted)).   OBA does not have individual standing.

### 2.    OBA Lacks Associational Standing

OBA also cannot meet the requirements to establish associational standing. Associational standing is a narrow and limited exception to the general rule that "litigants may not assert the rights of absent third parties."  *United Food*, 517 U.S. at 557.   Associational standing permits an organization to litigate as a representative of its members if (1) the organization's "members would otherwise have standing to sue in their own right"; (2) the interests that the organization "seeks to protect are germane to the organization's purpose"; and (3) "*neither* the claim asserted *nor* the relief requested requires the participation of individual members in the lawsuit.'"  *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 983–84 (C.D. Cal. 2008) (emphasis added) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)), *aff'd*, 362 F. App'x 640 (9th Cir. 2010).  The first two prongs are constitutional in nature and grounded in Article III; the third prong is "prudential" or one of the "judicially fashioned" limitations on the exercise of federal jurisdiction.  *United Food*, 517 U.S. at 556–58.  In this case, OBA does not satisfy the second or third prong of associational standing.[7]

---

[7]  If the Court rules that OBA has satisfied the second and third prongs of associational standing, Defendants reserve the right to challenge the first prong should Defendants learn, in discovery, that no individual member of OBA has standing to sue the Attorney General or the Director.  *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.").  As described above, the State is not a proper party regardless of whether any plaintiff has standing.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

### a. Plaintiffs Fail to Plead that this Lawsuit Is Germane to OBA's Purpose

As to the second prong, OBA has not pled that the interests it seeks to protect are germane to the organization's purpose. OBA alleges that "[i]ts mission is to be the voice of Oregon banking." (Compl. ¶ 2). It also alleges that it "is a trade association serving state and national banks, savings banks and associations, and trust companies doing business in Oregon." (*Id.*). But it makes no further allegations about its organizational purpose or about how this lawsuit furthers that purpose. OBA fails to connect its mission to the claims in this action and thus does not satisfy the germaneness requirement for associational standing. *See Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 365 F. Supp. 2d 1146, 1162 (D. Nev. 2005) (stating that an association has the burden of pleading sufficient facts to establish standing).

### b. This Lawsuit Requires Participation of OBA's Individual Members

As to the third prong, OBA's proffered claims and requested relief require individual members' participation in the lawsuit. Associational standing exists only "when the claims proffered and relief requested do not demand individualized proof on the part of its members." *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991); *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) ("[T]he relief sought is only half of the story."). Claims seeking broad injunctive relief may require individualized proof because of the nature of either the claims or the relief sought. *See Lake Tahoe*, 365 F. Supp. 2d at 1164 (concluding that even though an association requested only declaratory and injunctive relief, it lacked standing to assert an as-applied takings claim

Page 14 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

where an ordinance had "separate and disparate effects on each of [the association's] different members").

OBA's claims require individualized proof. Plaintiffs raise an as-applied challenge to HB 4204 under the Supremacy, Contracts, Takings, and Due Process Clauses.[8] The as-applied nature of these three claims is apparent from the face of the Complaint. In their recitation of the factual background, Plaintiffs discuss the impact of HB 4204 on banks of varying sizes with different percentages of their portfolios in Oregon. (Compl. ¶¶ 32–37). Some—but not all—of these banks allegedly "imposed or collected fees or charges based on a missed periodic payment in March, April, or May of 2020 (before HB 4204's effective date)" and thus "are exposed to a private right of action (and attorney fees) for conduct that was legal at the time it occurred." (Compl. ¶ 35). Plaintiffs also allege that the law may prevent some—but not necessarily all— banks from requiring borrowers to maintain sufficient funds in escrow accounts. (Compl. ¶ 37). Plaintiffs thus acknowledge that some banks doing business in Oregon, including potentially OBA's own members, are unaffected or uninjured by HB 4204.

Each claim for relief reinforces that Plaintiffs are asserting an as-applied challenge that requires individualized proof. In its first claim for relief under the Supremacy Clause, Plaintiffs allege that federal law preempts only "those sections of HB 4204 as-applied to national banks and federal savings associations." (Compl. ¶ 40). Plaintiffs allege that other provisions of federal law preempt only "those sections of HB 4204 as applied to out-of-state chartered banks."

---

[8] "A statute may be unconstitutional 'on its face' or 'as applied.' A successful challenge to the facial constitutionality of a statute invalidates the statute itself, whereas a successful as-applied challenge does not render the statute itself invalid but only the particular application of the statute." *Davis v. Johnson*, 359 F. Supp. 3d 831, 863 (N.D. Cal. 2019) (citing *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

Page 15 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

(*Id.*).  Still other provisions have preemptive effect to the extent that HB 4204 is "applied to federally backed mortgages."  (Comp. ¶ 41).  Finally, Plaintiffs allege that HB 4204 is preempted as applied to Oregon-chartered banks only in so far as it prevents them from exercising "the same powers as their federal counterparts."  (Compl. ¶ 43).

To prove these preemption allegations, not only will Plaintiffs need to differentiate between how HB 4204's provisions apply to OBA's various members, but they also will need to show that HB 4204 will "impair significantly" the ability of national banks to exercise the powers granted by Congress.  *See Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996) (stating that state laws regulating national banks are not preempted unless the state law will "impair significantly" or "prevent or significantly interfere with the national bank's exercise of its powers"); *see also* 12 U.S.C. § 25b (codifying the *Barnett* standard and requiring a "case-by-case" analysis of the effect of any state law on national banks).  The same standard applies to federal savings associations.  *See* 12 U.S.C. § 1465(a) (making the preemption analysis identical for national banks and federal savings associations).  Accordingly, the Supremacy Clause claim will require individualized proof of whether and to what degree HB 4204 impairs OBA members' exercise of federally conferred powers.

To succeed on Plaintiffs' second claim for relief under the Contracts Clause, OBA will need to prove that that HB 4204 operates "as a substantial impairment of a contractual relationship." *Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).  "This inquiry has three components:  whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* (quoting *Gen. Motors*, 503 U.S. at 186).  The Complaint attempts to satisfy these requirements by alleging that "HB 4204 substantially impairs

Page 16 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Plaintiffs' preexisting contractual relationships by altering the contractual obligations owed to Plaintiffs and by depriving them of the benefit of their contractual rights and protections." (Compl. ¶ 48). OBA, as a trade organization, does not have any contracts with borrowers that could be impaired by HB 4204. Rather, at most, some OBA members might have contracts that could be impaired. Thus, OBA would need individualized proof concerning its individual members' particular contractual relationships and the degree to which HB 4204 impairs them.

In their third claim, Plaintiffs allege that, if HB 4204 is read to apply retroactively, it would take vested property rights without due process or just compensation. (Compl. ¶ 60). Regarding due process, Plaintiffs allege that HB 4204 "arbitrarily and irrationally impos[es] substantial retroactive liability for banks based on conduct that was legal at the time it occurred, and . . . void[s] final judgments and other vested property rights." (Compl. ¶ 58). This appears to be a substantive, as opposed to procedural, due process claim. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013) (describing elements of substantive due process claim). To succeed on this claim, OBA must prove that its members have been arbitrarily deprived of a property interest. *Id.* This will depend on "individualized economic and financial data." *Rent Stabilization*, 5 F.3d at 597 (concluding that organization did not have standing to bring a substantive due process claim).

Similarly, to succeed on any takings claim, OBA must first show that its members "possess[ ] a constitutionally protected property interest." *McIntyre v. Bayer*, 339 F.3d 1097, 1099 (9th Cir. 2003). OBA also must present proof of the magnitude of HB 4204's "economic impact and the degree to which it interferes with legitimate property interests." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540 (2005)). This inquiry is "essentially ad hoc and fact intensive." *E. Enterprises v. Apfel*, 524 U.S. 498, 523 (1998) (plurality opinion). Accordingly,

Page 17 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

on the takings claim, OBA would need to present individualized proof of each member's protected property interest and how HB 4204 interferes with it. *See Rent Stabilization*, 5 F.3d at 596–97 (holding that organization did not have standing to bring a Takings Clause claim because the court "would have to engage in an *ad hoc* factual inquiry for each landlord who alleges that he has suffered a taking").

Because of the fact-intensive nature of Plaintiffs' claims, OBA's individual members must participate in the litigation. Otherwise, the litigants face the risk that OBA lacks "adversarial intensity" and "the evidence necessary" to prosecute its case. *United Food*, 517 U.S. at 556. Accordingly, OBA does not have associational standing to bring the claims on its members' behalf. *See Parent/Prof'l Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13, 35 (1st Cir. 2019) (denying associational standing where "[e]fficient and successful judicial resolution of the claims would . . . require participation and cooperation by numerous students and parents"); *Free Speech Coal., Inc. v. Attorney Gen. U.S.*, 787 F.3d 142, 154 (3d Cir. 2015) ("Identifying those members for whom the Statutes may be unconstitutional thus requires an individualized inquiry that fails to satisfy the requirements for associational standing."), *modified on other grounds on reh'g*, 825 F.3d 149 (3d Cir. 2016); *Ass'n of Christian Sch.*, 362 F. App'x at 644 (holding that an association of high schools did not have standing to challenge a university admissions policy because the as-applied claims would require "individualized proof" specific to particular high school courses and the schools that offered them); *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 171 n.4 (2d Cir. 2001) (holding that an organization lacked associational standing to bring a due process claim where "[s]uch a challenge would plainly require examination of facts specific to each claimant").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Moreover, the relief Plaintiffs seek—like their proffered claims—would require OBA's individual members' participation.  Plaintiffs request a declaration that subsections (3) and (9) violate the Supremacy and Contracts Clauses and that retroactive application of some provisions of HB 4204 would be an unconstitutional taking or violative of due process rights.  Plaintiffs also request an injunction to prevent Defendants from enforcing subsections (3) and (9) or enforcing HB 4204 retroactively.  But only certain OBA members, if any, may be entitled to this relief.

For example, only Oregon banks who cannot exercise the same powers as their federal counterparts may be entitled to relief under the Supremacy Clause.  Only those members who have had their contractual relationships substantially impaired would have any basis to claim relief under the Contracts Clause.  And only those members have been deprived of a legitimate property interest could have any basis to claim relief under the Due Process and Takings Clauses.  This means that to the extent OBA members have viable claims, the Court would need to fashion individual remedies based on "these multiple variations, specific to individual members." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (holding that organization lacked standing to seek declaratory and injunctive relief where "the individual situations" of members varied).  Because the injuries alleged are individualized and based on specific application of HB 4204 to each of OBA's members, OBA necessarily seeks separate, as opposed to generalized, relief and thus does not have associational standing.  The Court should dismiss all OBA's claims.

### E.  Lewis & Clark Bank and People's Bank of Commerce Do Not Have Standing to Bring Their Third Claim for Relief

Like OBA, Lewis & Clark Bank and People's Bank of Commerce lack individual standing to bring their third claim based on retroactivity, the Due Process Clause, and the

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Takings Clause.  Plaintiffs have an obligation to satisfy the three requirements of individual standing for each claim.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("Our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").  In their third claim, Lewis & Clark Bank and People's Bank of Commerce plead no facts showing personal injury, fairly traceable to the defendant's allegedly unlawful conduct, that is likely to be redressed by the requested relief.

In their third claim, Plaintiffs allege that "[b]etween March 8, 2020 and June 30, 2020, OBA members legally exercised contractual rights now prohibited by HB 4204."  (Compl. ¶ 57).  They also plead that in the same period, "Oregon courts entered judgments of foreclosure and sale in favor of OBA members."  (Compl. ¶ 59).  Unlike Plaintiff Bank of Eastern Oregon, which allegedly assessed contractually authorized late fees between March 8 and June 30, 2020, neither Lewis & Clark Bank nor People's Bank of Commerce alleges that it legally exercised any contractual right that HB 4204 now prohibits.  The only injury alleged by Lewis & Clark Bank occurred *after* the statute's enactment on June 30, 2020.  (Compl. ¶ 3).  People's Bank of Commerce alleges no harm whatsoever.  (Compl. ¶ 5).  The face of the Complaint shows that the alleged retroactive application of HB 4204 has no impact on Lewis & Clark Bank or People's Bank of Commerce, and a favorable ruling could not redress any harm suffered by these two plaintiffs.  They therefore lack standing to bring the third claim for relief.

## V.    CONCLUSION

Based on the foregoing jurisdictional defects, Defendants respectfully request that the Court dismiss all claims against the State, dismiss the Takings Clause claim against the Attorney General and Director, dismiss all claims concerning subsection (9)'s notice requirement, dismiss

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

all OBA's claims, and dismiss Lewis & Clark Bank's and People's Bank of Commerce's third

claim.

DATED this 29th day of September, 2020.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/Keith Ketterling
**Keith Ketterling**, OSB No. 913368
Email: kketterling@stollberne.com
**Steven C. Berman**, OSB No. 951769
Email: sberman@stollberne.com
**Megan K. Houlihan**, OSB No. 161273
Email: mhoulihan@stollberne.com

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile:  (503) 227-6840

*Special Assistant Attorneys General for the State of*
*Oregon, Ellen Rosenblum, and Andrew Stolfi*

Page 21 - **DEFENDANTS' FRCP 12(B)(1) MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840