**TIM CUNNINGHAM, OSB #100906**
timcunningham@dwt.com
**GREGORY A. CHAIMOV, OSB #822180**
gregorychaimov@dwt.com
**CHRIS SWIFT, OSB #154291**
chrisswift@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

> Attorneys for Plaintiffs Oregon Bankers Association,
> Lewis & Clark Bank, Bank of Eastern Oregon
> and People's Bank of Commerce

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OREGON BANKERS ASSOCIATION, LEWIS & CLARK BANK, BANK OF EASTERN OREGON AND PEOPLE'S BANK OF COMMERCE,**<br><br>           **PLAINTIFFS**,<br><br>  v.<br><br>**STATE OF OREGON, ELLEN ROSENBLUM, in her official capacity as the Attorney General of the State of Oregon, and ANDREW STOLFI, in his official capacity as the Director of the Oregon Department of Consumer and Business Services,**<br><br>           **DEFENDANTS**. | Case No. 6:20-cv-01375-AA<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

4844-1110-1643v.11 0116228-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

                                                                                  **Page**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND .................................................................................. 2

        A.      Financial Institutions and the Federal Government Respond to COVID-19. ......... 2

        B.      Ignoring Federal Regulations, Oregon Enacts HB 4204. ...................................... 3

        C.      Plaintiffs Challenge HB 4204's Unconstitutional Provisions.............................. 4

III.    LEGAL STANDARD .......................................................................... 6

IV.     ARGUMENT ....................................................................................... 6

        A.      Plaintiffs' Claims Against the Attorney General or Director Are Not
                Barred by Sovereign Immunity.................................................................. 6

        B.      Plaintiffs' Claims Against HB 4204's Notice Provisions Are Not Moot. ............. 9

        C.      Plaintiffs Have Standing to Assert Their Claims. ................................................. 11

                1.      Bank of Eastern Oregon Has Standing to Assert Plaintiffs' Claims,
                        Defeating Defendants' Attempt to Dismiss other Plaintiffs for Lack
                        of Standing. ....................................................................................... 11

                2.      OBA Has Standing to Assert Plaintiffs' Claims. ...................................... 13

V.      CONCLUSION................................................................................... 22

DAVIS WRIGHT TREMAINE LLP
4844-1110-1643v.11 0116228-000001          1300 S.W. Fifth Avenue, Suite 2400
                                           Portland, Oregon  97201-5610
                                    (503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Sierra Club v. Trump*,
963 F.3d 874 (9th Cir. 2020) ...................................................................22

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*,
829 F.2d 933 (9th Cir. 1987) ...................................................................16

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
938 F.3d 1147 (9th Cir. 2019) .................................................................13

*Am. Fed'n of Gov't Employees Local 1 v. Stone*,
502 F.3d 1027 (9th Cir. 2007) ...................................................................6

*Ass'n of Christian Sch. Int'l v. Stearns*,
362 Fed. App'x 640 (9th Cir. 2010) ........................................................21

*Ass'n of Christian Sch. Int'l v. Stearns*,
678 F. Supp. 2d 980 (C.D. Cal. 2008) .....................................................15

*Ass'n of Equip. Manufacturers v. Burgum*,
932 F.3d 727 (8th Cir. 2019) ...................................................................18

*Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*,
159 F.3d 1178 (9th Cir. 1988) .................................................................15

*Barnett Bank of Marion County, N.A. v. Nelson*,
517 U.S. 25 (1996) ...................................................................................17

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
941 F.3d 1195 (9th Cir. 2019) ...........................................................9, 10

*Brown v. City of L.A.*,
521 F.3d 1238 (9th Cir. 2008) ...........................................................2, 11

*City of S. Lake Tahoe Retirees Ass'n v. City of S. Lake Tahoe*,
2017 WL 2779013 (E.D. Cal. June 27, 2017) .........................................20

*Coal. to Defend Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) ...................................................................6

*Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*,
365 F. Supp. 2d 1146 (D. Nev. 2005) ......................................................19

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Davis v. Johnson*,
    359 F. Supp. 3d 831 (N.D. Cal. 2019) .................................................................16

*Dominguez v. Schwarzenegger*,
    2010 WL 3447691 (N.D. Cal. Aug 30, 2010) ......................................................14

*Free Speech Coal., Inc. v. Attorney Gen. U.S.*,
    787 F.3d 142 (3d Cir. 2015).................................................................................21

*Gen. Motors Corp. v. Romein*,
    503 U.S. 181, 112 S. Ct. 1105, 117 L. Ed. 2d 328 (1992).....................................18

*Hunt v. Washington State Apple Advert. Comm'n*,
    432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).......................................14

*Indep. Living Ctr. of S. California, Inc. v. Kent*,
    909 F.3d 272 (9th Cir. 2018) ...............................................................................12

*Knick v. Township of Scott, Penn.*,
    —U.S.—, 139 S. Ct. 2162 (2019)...........................................................................8

*Ladd v. Marchbanks*,
    971 F.3d 574 (6th Cir. 2020) .................................................................................8

*Lazar v. Kroncke*,
    862 F.3d 1186 (9th Cir. 2017) .............................................................................18

*In re Lazar*,
    237 F.3d 967 (9th Cir. 2001) .................................................................................6

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871, 110 S.Ct. 3177, 111 L. Ed. 2d 695 (1990)................................6, 15

*Lusnak v. Bank of Am., N.A.*,
    883 F.3d 1185 (9th Cir. 2018), *cert. den,* 139 S. Ct. 567, 202 L. Ed. 2d 403 (2018).............17

*McShannock v. JPMorgan Chase Bank, NA*,
    —F.3d—, 2020 WL 5639700 (9th Cir. 2020) ......................................................17

*MetroPCS Cal., LLC v. Picker*,
    970 F.3d 1106 (9th Cir. 2020) .............................................................................10

*Montana Shooting Sports Ass'n v. Holder*,
    727 F.3d 975 (9th Cir. 2013) ...............................................................................11

*New York State Nat. Org. for Women v. Pataki*,
    261 F.3d 156 (2d Cir. 2001)................................................................................21

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Oregon Advocacy Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) ..............................................................14

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002)...................................................................15

*Parent/Prof'l Advocacy League v. City of Springfield, Mass.*,
    934 F.3d 13 (1st Cir. 2019)....................................................................21

*Presidio Golf Club v. Nat'l Park Serv.*,
    155 F.3d 1153 (9th Cir. 1998) ...............................................................14

*Rent Stabilization Ass'n of City of N.Y. v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993).................................................................15, 20

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47, 126 S.Ct. 1297, 164 L. Ed. 2d 156 (2006).......................11

*Seven Up Pete Venture v. Schweitzer*,
    523 F.3d 948 (9th Cir. 2008) ...................................................................8

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)..................................................................................12

*Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*,
    2015 WL 1870841 (N.D. Cal. Apr 23, 2015) ........................................16

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*,
    661 F. Supp. 2d 1076 (D. Ariz. 2009), *recons in part on other grounds,* 2009
    WL 2710151 (D. Ariz. Aug. 26, 2009).................................................15

*State v. Smyth*,
    286 Or. 293, 593 P.2d 1166 (Or. 1979) ..................................................9

*United States v. Sec. Indus. Bank*,
    459 U.S. 70, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982)............................7

*WildEarth Guardians v. U.S. Dep't of Agric.*,
    795 F.3d 1148 (9th Cir. 2015) .................................................................6

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ...................................................................6

**Statutes**

12 U.S.C.
    § 25b (b)(1)(B).......................................................................................17

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

28 U.S.C. § 1331 ...................................................................................................12

42 U.S.C. § 1983 .....................................................................................................8

House Bill 4204 ................................................................................. *passim*

ORS
    706.580...............................................................................................................10
    706.785...............................................................................................................10
    Chapters 706 to 716 ..........................................................................................10

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .............................................................6

**Regulations**

12 C.F.R. § 560.2(b) ............................................................................................17

**Constitutional Provisions**

U.S. Const.
    amend. XI.................................................................................................1, 6, 8

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).............................................................13

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## I.    INTRODUCTION

Plaintiffs Oregon Bankers Association ("OBA"), Lewis & Clark Bank, Bank of Eastern Oregon, and People's Bank of Commerce challenge several provisions of the recently enacted House Bill 4204.  HB 4204 imposes a sweeping set of restrictions that—contrary to federal law—fundamentally alter the agreed-upon terms of loan contracts, require banks to provide potentially misleading information to their borrowers, and threaten—likely inadvertently—to impose massive liability on banks for actions taken prior to the statute's enactment.  Defendants Ellen Rosenblum, in her official capacity as Oregon's Attorney General, and Andrew Stolfi, in his official capacity as the Director of the Oregon Department of Consumer and Business Services do not argue Plaintiffs have failed to state a claim.[1]  In fact, ***even if the Court were to grant Defendants' motion in full***, every one of Plaintiffs' claims survives intact, with a plaintiff remaining to advance this case.  But even the arguments Defendants do raise are meritless, and the Court should deny Defendants' Motion for the following reasons.

***First***, Plaintiffs' third claim does not assert a taking.  Defendants attempt to invoke immunity under the Eleventh Amendment from Plaintiffs' third claim solely because the alternative relief it seeks—barring retroactive enforcement of HB 4204 if it is deemed to operate retroactively—*relies* on the Takings Clause.  But that is a far cry from actually *asserting* a taking.  To the contrary, Plaintiffs' third claim expressly seeks declaratory and equitable relief *to prevent any takings from occurring*.  Because Plaintiffs do not assert a takings claim, and because Defendants concede Plaintiffs may obtain injunctive and declaratory relief against them, Defendants are not immune from the relief Plaintiffs seek.

---

[1] The third named defendant, the State of Oregon, moves to be dismissed from this case because it is immune from suit under the Eleventh Amendment to the United States Constitution. Plaintiffs do not oppose this motion, and will voluntarily dismiss the State of Oregon.  However, as Defendants tacitly concede, the *Ex parte Young* exception to Eleventh Amendment immunity permits Plaintiffs to receive the relief they seek from the Attorney General and the Director.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

***Second***, HB 4204's notice provision is not moot because Defendants can still enforce it. Defendants move to dismiss Plaintiffs' challenge to the statute's notice requirement as moot because the notice deadline has already passed, but the fact that the deadline has passed does not mean that the requirement ceases to have legal effect. To the contrary, the fact that banks can no longer satisfy their statutory obligations if they failed to issue potentially misleading notices to their borrowers means that the *only* way they can protect themselves from enforcement actions by Defendants is through the relief Plaintiffs seek here.

***Finally***, Plaintiffs have standing to pursue each of their claims. Defendants move to dismiss OBA entirely for lack of standing and attack two other plaintiffs' standing as to their third claim. But Defendants fail to challenge Plaintiff Bank of Eastern Oregon's standing on *any* of Plaintiffs' claims. This partial challenge to the Court's jurisdiction fails. Bank of Eastern Oregon's uncontested standing to bring Plaintiffs' claims establishes that all three claims are justiciable and within the Court's jurisdiction, without the need for any further standing analysis. *See, e.g., Brown v. City of L.A.,* 521 F.3d 1238, 1240 n.1 (9th Cir. 2008) ("[T]he presence in a suit of even one party with standing suffices to make a claim justiciable."). In any event, OBA has alleged sufficient facts to establish its associational standing, especially at the pleading stage.

Plaintiffs do not oppose dismissing the State of Oregon, but the remainder of Defendants' motions not only fail as a matter of law, they would do nothing to advance the resolution of this case even if granted. The Court should deny Defendants' motions and allow this case to proceed to a decision on the merits.

## II.    BACKGROUND

### A.    Financial Institutions and the Federal Government Respond to COVID-19.

Lewis & Clark Bank, Bank of Eastern Oregon, People's Bank of Commerce, and OBA's members—along with nearly every other bank doing business in Oregon—have responded to the COVID-19 pandemic by working with borrowers to voluntarily modify or waive loan obligations based on borrowers' individual needs and banks' duty to maintain the safety and soundness of

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

the banking system.  Compl. ¶¶ 1-6.  In addition to these individualized measures, the federal government has also temporarily prohibited foreclosures on certain loans and imposed other temporary requirements on banks as part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.  *Id.* ¶¶ 2, 19-22.

Following passage of the CARES Act, the Office of the Comptroller of Currency ("OCC") issued a bulletin reminding state and local governments that federal law "preempt[s] state laws that conflict with the real estate lending powers of banks and specifically preempt[s] state laws that interfere with banks' ability to make mortgage loans secured by real estate."  OCC Bulletin 2020-62, "COVID-19 Relief Programs:  Preemption" (June 17, 2020).  The OCC cautioned against state and local governments' attempts to impose additional restrictions on banks:  "the proliferation of a multitude of competing requirements will conflict with banks' ability to operate effectively and efficiently, potentially increasing the risk to banks' safety and soundness and ultimately harming consumers."  *Id.*

### B.    Ignoring Federal Regulations, Oregon Enacts HB 4204.

Despite this clear federal guidance—and after only one week of deliberation—the Oregon legislature rushed through HB 4204, fundamentally altering financial institutions' contractual rights during the current "emergency period" and for decades into the future.  Subsection 1(3) imposes a mandatory forbearance for the duration of the emergency period if a borrower "notifies the lender that the borrower will not be able to make the periodic installment payment."  HB 4204 § 1(3).  Lenders cannot contest a borrower's demand for forbearance, but must "[d]efer from collecting the periodic installment payment during the emergency period" and "[p]ermit the borrower to pay an amount the borrower owes to the lender as a result of a deferral under this subsection at the scheduled or anticipated date on which full performance of the obligation is due."  *Id.*  Subsection 1(3) also prohibits lenders from exercising various contractual rights they might otherwise have in response to a missed payment, including assessing charges or fees, or imposing a default interest rate, among other remedies.  *Id.*  HB

Page 3 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4204 creates a private right of action for violations of this subsection, permitting borrowers to recover their actual damages, costs, and attorney fees. HB 4204 § 1(8).

Other subsections of HB 4204 prohibit lenders from initiating or maintaining foreclosure proceedings, bar courts from "enter[ing] a judgment of foreclosure and sale or issue a writ of execution," and provide that "[a]ny purported trustee's sale" or "[a]ny purported execution sale" occurring "during the emergency period is void and does not transfer or foreclose any rights to the subject property." HB 4204 §§ 1(4)-(7). Although HB 4204 was not signed into law until June 30, 2020, all of the provisions described above apply throughout the "emergency period" that began on March 8, 2020 and continues until December 31, 2020.[2]

Finally, HB 4204 requires all lenders authorized to do business in Oregon to "provide written notice by mail to all of the lender's borrowers of a borrower's rights for accommodation under this section." HB 4204 § 1(9).

### C.    Plaintiffs Challenge HB 4204's Unconstitutional Provisions.

Plaintiffs assert two claims challenging Subsection 1(3) of HB 4204. As described above, that subsection effectively rewrites loan agreements to defer missed payments during the emergency period until the end of the loan term, and prohibits financial institutions from exercising any contractual protections in the event of nonpayment on a mortgage loan: lenders cannot deem nonpayment to be a default, assess charges or fees, apply default interest rates, or exercise any other contractual right the lenders relied upon when they agreed to extend credit to borrowers. Plaintiffs' first claim seeks a declaration that federal law preempts this subsection and an injunction prohibiting its enforcement. Their second claim seeks a declaration that this subsection violates the Contract Clause of the United States Constitution, and requests the same injunctive relief. Both claims also challenge Subsection 1(9)'s requirement that lenders notify

---

[2] Governor Brown extended the emergency period from September 30, 2020 until the end of the year. Executive Order 20-37 (2020), available at: https://drive.google.com/file/d/1yaBY1l_cOhRh08gAR6t7bC83isXbHt4S/view.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

borrowers about the illusory rights the statute attempts to provide them in contravention of federal law. Plaintiffs seek declaratory and injunctive relief against Subsection 1(9) in order to ensure that banks face no ongoing obligation to provide false information to borrowers—and no risk of liability for failing to provide that false information.

Plaintiffs' third claim seeks a declaration that HB 4204 does not apply retroactively, and an injunction preventing its retroactive enforcement. As noted above, the hastily drafted HB 4204 defines the "emergency period" during which its provisions operate as beginning on March 8, 2020—even though the statute was not signed into law until June 30, 2020. This oversight, if construed to mean that the statute operates retroactively, would allow borrowers to sue banks for actual damages, costs, *and even attorney fees* for actions that banks had every right to take prior to June 30, 2020. Moreover, other subsections of the statute prohibit banks from initiating foreclosures, and purport to void any judgment of foreclosure or the effect of any foreclosure sale that does occur. HB 4204 §§ 1(4)-(7). If erroneously interpreted to operate retroactively, HB 4204 would therefore vacate final judgments and unsettle titles transferred before June 30, 2020. In the alternative to declaring that HB 4204 does not operate retroactively as a matter of statutory construction, Plaintiffs request declaratory and injunctive relief barring any retroactive application of the statute as a violation of the Due Process and Takings Clauses of the United States Constitution.

In their motion, Defendants do not move against Plaintiffs' first or second claim against Subsection 1(3) as asserted by any of the individual bank plaintiffs, nor do they challenge the primarily relief sought by Bank of Eastern Oregon on the third claim—i.e., declaratory and injunctive relief preventing retroactive operation of the statute as a matter of statutory construction. Instead, Defendants attempt to chip around the edges of Plaintiffs' complaint in what seems to be nothing more than an attempt to delay a decision on the merits.

DAVIS WRIGHT TREMAINE LLP
4844-1110-1643v.11 0116228-000001                    1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## III.   LEGAL STANDARD

When moving to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a party may either show that the allegations of the complaint, taken as true, are insufficient to invoke federal jurisdiction, or present evidence to dispute allegations that, by themselves, would otherwise be sufficient to invoke jurisdiction.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  Where a party brings a facial, rather than factual, challenge under Rule 12(b)(1), courts "are required . . . to construe the complaint in a light most favorable to the non-moving party, and to draw all reasonable inferences from the complaint in that party's favor . . . ."  *Am. Fed'n of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027, 1032 (9th Cir. 2007) (internal quotation marks, citations, and alterations omitted).  As such, where standing is challenged, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L. Ed. 2d 695 (1990).  "A plaintiff has the burden to establish that it has standing."  *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015).  But "an entity invoking Eleventh Amendment immunity bears the burden of asserting and proving those matters necessary to establish its defense."  *In re Lazar*, 237 F.3d 967, 974 (9th Cir. 2001)

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Against the Attorney General or Director Are Not Barred by Sovereign Immunity.

As Defendants admit, the *Ex parte Young* exception to Eleventh Amendment immunity permits "actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  That is the only relief Plaintiffs seek in this case, and a judgment in Plaintiffs' favor will not contain a money award.  Accordingly, Defendants do not challenge Plaintiffs' preemption or Contract Clause claims.  Based on their misreading of several irrelevant cases, however, Defendants move to dismiss a portion of Plaintiff's third claim—even though that claim also seeks only prospective declaratory and injunctive relief.

Page 6 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs' third claim asks the Court to declare, as a matter of statutory construction, that Subsection 1(3) of HB 4204 does not apply to conduct occurring prior to the statute's enactment, and to enjoin Defendants from enforcing the statute against such conduct. Compl. ¶ 62. Alternatively, Plaintiffs request declaratory and injunctive relief barring any retroactive application of the statute because penalizing conduct that was legal and contractually permissible at the time it occurred would violate the Due Process Clause, and invalidating judgments of foreclosure and other vested property rights violates the Takings Clause. Compl. ¶ 63. Neither of these remedies seek to recover damages or any other form of compensation for any takings that would be caused by the retroactive application of HB 4204. Indeed, if plaintiffs receive the relief they request, the State *could not* face any liability because no retroactive takings would occur. Only *Defendants'* apparent position—that HB 4204 operates retroactively to invalidate final judgments and destroy other vested property rights—creates a risk that the State will face monetary liability. Perversely, *granting* Defendants' motion here would open the State to substantial monetary liability in future takings actions, while a judgment in Plaintiffs' favor on the merits would eliminate the State's potential liability for retroactive takings.[3]

Defendants cite no cases supporting the idea that a plaintiff may not seek a declaration that a statute is not retroactive because if it were, the statute would effect a taking. This is because plaintiffs clearly have the right to do so. *See, e.g., United States v. Sec. Indus. Bank*, 459 U.S. 70, 73, 82, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982) (where Court of Appeals invalidated retroactive operation of statute as a violation of the Takings Clause, Supreme Court affirmed on ground that statute should be presumed not to operate retroactively to avoid conflict with Takings Clause: "'we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the' takings

---

[3] Plaintiffs take no position on whether enforcement of HB 4204's forfeiture provisions after the effective date might constitute a taking.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax
4844-1110-1643v.11 0116228-000001

clause") (quoting *N.L.R.B. v. Catholic Bishop of Chicago,* 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L. Ed. 2d 533 (1979)).  Rather, the cases Defendants rely on involved a plaintiff either directly seeking damages for a taking or attempting to disguise a claim for damages as one for injunctive relief in order to evade the Eleventh Amendment.  For example, in *Seven Up Pete Venture v. Schweitzer*—the case on which Defendants primarily rely—the plaintiff brought a "reverse condemnation action in federal district court" seeking "monetary relief against state officials in their official capacities."  523 F.3d 948, 950, 952 (9th Cir. 2008).  On appeal, the plaintiff first unsuccessfully urged the Ninth Circuit to create a new exception to the Eleventh Amendment allowing federal reverse condemnation suits seeking damages.  *Id.* at 954-56.[4]  "As its last resort," the plaintiff argued that its claim for monetary relief could be construed as "seeking injunctive relief against state officers to force them to adhere to the Constitution"—that is, to pay plaintiff the compensation he demanded.  *Id.* at 956.  The court rejected this semantic change because the plaintiff still sought retrospective monetary relief, rather than injunctive relief "properly characterized as prospective."  *Id.*  Likewise, in *Ladd v. Marchbanks*, the plaintiff sought an injunction ordering state officials "to initiate eminent domain proceedings in state court" in order to provide plaintiff compensation for a past alleged taking.  971 F.3d 574, 581 (6th Cir. 2020).

    Neither of these cases are relevant here.  Plaintiffs neither seek damages nor request an "injunction" that would require the State to pay anything to Plaintiffs.  To the contrary, Plaintiffs

---

[4] The *Seven Up* plaintiffs based this failed argument on the "self-executing" nature of the Takings Clause.  Here, Defendants erroneously rely on the same theory to argue that Plaintiffs secretly seek damages in this case, even though no such damages would be available if Plaintiffs prevail.  *See* Mot. at 10 (citing *Knick v. Township of Scott, Penn.*, —U.S.—, 139 S. Ct. 2162, 2171 (2019)).  In *Knick*, the United States Supreme Court held that plaintiffs could bring a takings claim seeking compensation in federal court under 42 U.S.C. § 1983 without bringing a claim in state court first.  139 S. Ct. at 2167.  This ruling may make it easier for lenders to recover damages from the State in future cases if Defendants' misguided effort to expose the State to substantial takings liability succeeds, but it otherwise has no bearing on this case.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

seek to *prevent* the State from unintentionally exposing itself to substantial monetary liability through the retroactive application of HB 4204. Defendants are not immune from this claim, and their motion to dismiss should be denied.[5]

**B.    Plaintiffs' Claims Against HB 4204's Notice Provisions Are Not Moot.**

Next, Defendants move to partially dismiss Plaintiffs' first and second claims as applied to the notice requirement in Subsection 1(9) of HB 4204. That subsection provides: "Within 60 days following the effective date of this 2020 special session Act, each lender authorized to do business in this state must provide written notice by mail to all of the lender's borrowers of a borrower's rights for accommodation under this section." 2020 HB 4204 § 1(9). As the Complaint explains, Subsection 1(9) "requires lenders to 'inform' borrowers of illusory rights, jeopardizing lenders' rights to enforce their contracts as-written in the future." Compl. ¶ 48. Defendants contend that because the 60-day deadline has elapsed, Plaintiffs' challenge is moot. Mot. at 11 (citing *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (adopting rule that "in determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.")). Defendants' reliance on *Bd. of Trustees* is misplaced, and their argument fails.

---

[5] In a footnote, Defendants alternatively ask the Court to either order Plaintiffs to make their claim more definite and certain or to strike all allegations regarding the Takings Clause as immaterial. Mot. at 10 n.5. Even if this one sentence aside is construed as a proper motion, it should also be denied. The Complaint clearly states the basis for Plaintiffs' third claim and the relief sought under it; no further clarification that Plaintiffs do not seek damages should be required. The allegations regarding the Takings Clause are material to both remedies requested under Plaintiffs' third claim and should not be stricken. *See, e.g. State v. Smyth*, 286 Or. 293, 296, 593 P.2d 1166 (Or. 1979) ("[S]tatutes will not be construed to violate constitutional prohibitions unless no other construction is possible."). If Defendants wished to contend that Plaintiffs' third claim fails to state a claim, they should have done so. Instead, Defendants moved only to assert immunity to which they are not entitled.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

HB 4204's notice provision remains in force and has not expired or been repealed or amended. The Director and Attorney General have general regulatory enforcement authority over banking laws like HB 4204 and could take action against any lender that failed to provide (or insufficiently provided) the required notice. *See* ORS 706.580 (authorizing Director to take enforcement actions "if a banking institution or non-Oregon institution: . . . (c) Violates a law of this state or the United States or a duly issued order of the director."); ORS 706.785 (requiring the Attorney General to "conduct all actions begun by the Director . . . under authority" of ORS chapters 706 to 716). As a result, *Bd. of Trustees* has no bearing on this case; even if the notice provision had "expired" (which it has not) "a case challenging expired legislation remains justiciable when the litigant still 'need[s] . . . the judicial protection that it sought.'" *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1116 (9th Cir. 2020) (citation omitted). Claims—even those challenging expired or repealed statutes—are "not moot '[i]n light of the ongoing civil and criminal ramifications of [the statute's] past violations." *Id.* (citation omitted). Thus, in *MetroPCS*, where the plaintiff sought "only forward-looking declaratory and injunctive relief" on its claim for federal pre-emption of certain California requirements that had *actually expired*, the Ninth Circuit held the claim was not moot because "MetroPCS has not complied with the 2017 and 2018 Resolutions" and the Court was "not aware of any basis for concluding that the CPUC can no longer bring an enforcement action." *Id.* at 1116-17. Here, banks who did ***not*** provide HB 4204's required notice (or provided a notice the State deems insufficient) face the threat of liability.[6] Other banks fearing administrative action have taken the opposite approach by continuing to provide potentially false or confusing information to their borrowers regarding

---

[6] Plaintiffs have confirmed that some banks did not send potentially misleading notices to their borrowers based on their understanding that HB 4204 is preempted by federal law, and, if necessary, Plaintiffs can prove that fact at the appropriate stage of the case. However, Plaintiffs are disinclined to submit evidence regarding specific banks' noncompliance with Subsection 1(9)'s notice requirement *precisely because* those banks continue to face a credible risk of enforcement—that is, precisely because Plaintiffs' challenge to the notice requirement is not moot.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ∙ (503) 778-5299 fax

newly originated loans even after Subsection 1(9)'s initial deadline.  Unless the Court resolves Plaintiffs' challenge to Subsection 1(9) on the merits, banks will not have the certainty they need to provide accurate information to their borrowers.  Defendants' mootness arguments should be rejected.

> **C.    Plaintiffs Have Standing to Assert Their Claims.**

Defendants' final two motions attempt to challenge the standing of three out of the four plaintiffs.  Defendants first contend that OBA, Oregon's only full-service trade association representing the banking industry, lacks associational standing to advocate on behalf of the banking industry and should be dismissed from the case entirely.  They also challenge the standing of Lewis & Clark Bank and People's Bank of Commerce to assert the Complaint's third claim for relief.  Both of these motions fail.

> **1.    Bank of Eastern Oregon Has Standing to Assert Plaintiffs' Claims, Defeating Defendants' Attempt to Dismiss other Plaintiffs for Lack of Standing.**

Whether the three challenged plaintiffs have standing individually is irrelevant because there is no dispute that the Court has jurisdiction over each of Plaintiffs' claims.  Defendants do not challenge Bank of Eastern Oregon's standing, and "the presence in a suit of even one party with standing suffices to make a claim justiciable."  *Brown,* 521 F.3d at 1240 n.1.  Once a single plaintiff establishes standing to assert a claim, the Court "need not address" the standing of any other party.  *Id.*; *see also Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981 (9th Cir. 2013) ("Because [individual plaintiff] Marbut has standing . . . we need not address whether the Second Amendment Foundation and the Montana Shooting Sports Association satisfy the requirements for organizational standing."); *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 52 n.2, 126 S.Ct. 1297, 164 L. Ed. 2d 156 (2006) (declining to address

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

4844-1110-1643v.11 0116228-000001

standing of additional plaintiffs "because the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement"). [7]

Here, it is undisputed that Bank of Eastern Oregon has standing to assert each of Plaintiffs' claims.  As an Oregon-chartered bank, Bank of Eastern Oregon's first claim requires the Court to determine whether Subsections 1(3) and 1(9) are preempted under federal law and whether that preemption extends to Oregon-chartered banks.[8]  Granting the declaratory and injunctive relief Bank of Eastern Oregon seeks would fully resolve the preemption issue for all Plaintiffs.  Likewise, Defendants do not contest that the bank has standing to assert Plaintiffs' Contract Clause claim or their challenge to the retroactive operation of HB 4204, and to obtain

---

[7] Nevertheless, all three of the challenged plaintiffs have standing.  OBA has associational standing and standing in its own right to bring Plaintiffs claims, as discussed below.  And, as a factual matter, Plaintiffs Lewis & Clark Bank and People's Bank of Commerce have confirmed that they took actions before June 30, 2020 that would be retroactively prohibited if Defendants' interpretation of the statute prevails.  If necessary, they will seek leave to amend the Complaint to set forth facts showing their standing to assert Plaintiffs' third claim.

[8] Although Bank of Eastern Oregon's preemption claim requires the Court to determine whether state law extends the preemptive effect of federal law to Oregon-chartered banks, that question does not divest this Court of jurisdiction over the claim.  "Federal courts have jurisdiction to hear 'cases in which a well-pleaded complaint establishes either that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 278 (9th Cir. 2018) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L. Ed. 2d 420 (1983)) (emphasis added).  Thus, even quiet title actions and other quintessential state law claims give rise to federal question jurisdiction where "some substantial, disputed question of federal law is a necessary element" of the claim.  *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315-16, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)) (exercising federal question jurisdiction over a quiet title action that required analysis of the federal notice statute).  Here, Bank of Eastern Oregon's claim necessarily depends on resolution of a substantial question of federal law: whether federal law preempts subsections 1(3) and 1(9) of HB 4204.  Should the Court determine that OBA has standing (discussed below), jurisdiction is similarly established.  *E.g. Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.")

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

all of the relief Plaintiffs seek on those claims. All of Plaintiffs' claims are therefore justiciable and the Court "need not address" the standing of any other plaintiff.

**2.      OBA Has Standing to Assert Plaintiffs' Claims.**

Although it does not need to in order to avoid dismissal, OBA sufficiently alleges facts establishing its associational standing. To have associational standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (citation omitted). OBA satisfies all three of these requirements. As the Complaint alleges:

> OBA is a trade association serving state and national banks,
> savings banks and associations, and trust companies doing
> business in Oregon. Its members include national banks and
> federal savings associations, Oregon-chartered financial
> institutions, and out-of-state financial institutions doing business in
> Oregon. Its mission is to be the voice of Oregon banking. Its
> members have originated loans subject to Oregon's HB 4204, and
> its members service loans subject to Oregon's HB 4204, discussed
> further below. OBA's members include financial institutions
> which acquired judgments of foreclosure in Oregon Courts
> between March 8, 2020 and June 30, 2020. OBA's members also
> include state-chartered and federally-chartered financial
> institutions subject to HB 4204.

Compl. ¶ 2. The remainder of the Complaint details the numerous ways in which HB 4204 has injured OBA's members. Unsurprisingly, Defendants do not contest the fact that OBA's members have standing to sue in their own right.

**a.      The interests OBA seeks to protect are germane to OBA's purpose.**

Defendants first argue that OBA's efforts in this case to protect the banking industry in Oregon from improper governmental regulation are not "germane" to its purpose as the Oregon banking industry's trade association. But that is one of the primary purposes of trade associations generally and OBA specifically. *See* ASSOCIATION, Black's Law Dictionary

Page 13 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

(11th ed. 2019) ("trade association. (1909) An association of business organizations having similar concerns and engaged in similar fields, formed for mutual protection, the interchange of ideas and statistics, and the establishment and maintenance of industry standards. . . . Among the joint actions that a trade association often takes are collecting industry data, advertising, marketing, and engaging in public relations and government relations."). As such, trade associations have standing to challenge governmental regulations that injure their members, and routinely do so. *See, e.g., Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977) ("If the Commission were a voluntary membership organization—a typical trade association—its standing to bring this action as the representative of its constituents would be clear under prior decisions of this Court."). Indeed, following *Hunt*, other types of organizations often demonstrate they have standing by showing they are the "functional equivalent of such a trade association." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (quoting *Hunt*, 432 U.S. at 345).

As "a trade association serving state and national banks" with the "mission to be the voice of Oregon banking," Compl. ¶ 2, OBA's purpose is to advocate on behalf of its members' interests, including their interest to be free from unconstitutional governmental interference. Defendants provide no support for their contention that these allegations fail to satisfy the minimal standard required by the germaneness prong. "The test for germaneness is not demanding and requires 'only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together.'" *Dominguez v. Schwarzenegger*, 2010 WL 3447691, at *3 (N.D. Cal. Aug 30, 2010) (quoting *Humane Soc'y of the United States v. Hodel,* 840 F.2d 45, 56 (D.C. Cir. 1988)); *see also Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998) (stating, "[C]ourts have generally found the germaneness test to be undemanding," and finding requirement satisfied in suit to enforce National Environmental Policy Act and the National Historic Preservation Act even though golf club's stated purposes did not include any environmental or historical objectives). OBA's allegations satisfy this

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

"undemanding" standard, *id.*, especially because on a motion to dismiss courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Federation,* 497 U.S. at 889.

> **b.    The claims OBA asserts and the relief it seeks do not require the participation of its individual members.**

Next, Defendants argue that OBA lacks standing because—according to Defendants—it cannot prove its claims without the extensive involvement of its members.  As with the second prong, however, "the threshold for satisfying the third prong . . . is not high, requiring Plaintiffs to show only that 'participation by *each allegedly injured party* would not be necessary.'" *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d 1076, 1085 (D. Ariz. 2009), *recons in part on other grounds,* 2009 WL 2710151 (D. Ariz. Aug. 26, 2009) (quoting *Hosp. Council of W. Pa. v. City of Pittsburgh,* 949 F.2d 83, 90 (3d Cir. 1991) (emphasis in *Spinedex*); *see also RCPA v. Chicago*, 7 F.3d 584, 603 (7th Cir. 1993) (finding requirement met where "[r]ecovery would not require that *each and every* [association member] establish that he was the recipient of a misrepresentation by the City") (emphasis added).  "The fact that a limited amount of individualized proof may be necessary does not in itself preclude associational standing."  *Alliance for Open Soc'y Int'l  Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 230 (2d Cir. 2011)); *see also Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002) (reversing dismissal because "the Society's suit should not be dismissed before it is given the opportunity to establish the alleged violations without significant individual participation").  Rather, associational standing is absent only where "claims require an 'ad hoc factual inquiry' for *each member* represented by the association . . . ." *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 986 (C.D. Cal. 2008) (quoting *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993)) (emphasis added).

"Individualized proof from the members is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages." *Assoc. Gen. Contractors of Am. v.*

4844-1110-1643v.11 0116228-000001                     DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1988); *see also Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) ("[B]ecause the Fund seeks declaratory and prospective relief rather than money damages, its members need not participate directly in the litigation.").  Associations have even had standing to recover damages for their members where, for example, their "claims are based almost entirely on local ordinances and resolutions, each of which applies to a broad swath" of the association's members.  *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 2015 WL 1870841, at *4 (N.D. Cal. Apr 23, 2015) (finding standing because the "potential limited participation by some members" did not "threaten administrative convenience or efficiency here.").

Here, Defendants attempt to transform Plaintiffs' claims—all of which seek generally applicable injunctive and declaratory relief without relying on the particular circumstances of any of OBA's members—into "fact-intensive" inquiries supposedly requiring the Court "to fashion individual remedies . . . specific to individual members."  Mot. at 18-19; *see Davis v. Johnson*, 359 F. Supp. 3d 831, 863 (N.D. Cal. 2019) ("A successful challenge to the facial constitutionality of a statute invalidates the statute itself, whereas a successful as-applied challenge does not render the statute itself invalid but only the particular application of the statute.").  While creative, Defendants' argument mischaracterizes both the nature of Plaintiffs' claims and the relief they seek.

Plaintiffs' first claim seeks a "declaration that federal law preempts [subsections 1(3) and 1(9)] of HB 4204 *in total*," and an injunction prohibiting defendants from implementing those sections of the statute.  Compl. ¶¶ 39-44 (emphasis added).  The complaint explains that federal law directly preempts these provisions as to all nationally chartered banks and federal savings associations, and out-of-state chartered banks, and state law extends that preemption to all Oregon-chartered banks.  Compl. ¶¶ 41, 43.  Defendants contend that because somewhat different *legal* questions pertain to these few discrete categories of financial institutions, Plaintiffs' preemption claim somehow requires "individualized proof."  Proof of *what* is unclear,

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

however.  What HB 4204 prohibits is clear from the face of the statute, and its limitations on

financial institutions' federally-granted powers is similarly clear.  *See* Compl. ¶ 14.  The only

question of fact Defendants identify is the mere existence of different types of financial

institutions.[9]  Mot. at 15-16 (claiming "individualized proof" is required "to differentiate

between how HB 4204's provisions apply to OBA's various members," and to show the legal

standard for preemption is met as to each category).  To the extent that fact requires any proof, it

can be established by OBA alone.  In short, OBA can and will prove that Subsections 1(3) and

---

[9] Defendants also incorrectly cite the legal standard for establishing preemption and argue that
the preemption of state statutes must be determined on a case-by-case (*i.e.,* a statute-by-statute)
basis.  Mot. at 22 (citing 12 U.S.C. § 25(b)).  Putting aside that even on a "case by case" basis,
preemption is a legal question measuring each *statute*, *Lusnak v. Bank of Am., N.A.*, 883 F.3d
1185, 1194 (9th Cir. 2018), *cert. den,* 139 S. Ct. 567, 202 L. Ed. 2d 403 (2018) (noting "case-by-
case basis" requires "individually evaluat[ing] state consumer laws," and recognizing bank's
preemption arguments were "purely legal and do not depend on resolution of any factual
disputes"), the "case-by-case" limitation applies *to the OCC*—not to courts.  12 U.S.C. § 25b
(b)(1)(B).  As Defendants correctly recognize, the preemption inquiry is controlled by *Barnett
Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996), which states that the "question is
basically one of congressional intent.  Did Congress, in enacting the Federal Statute, intend to
exercise its constitutionally delegated authority to set aside the laws of a State?  If so, the
Supremacy Clause requires courts to follow federal, not state, law."  *Id.* at 1107.  Plaintiffs
nowhere explain how *that* inquiry depends on "individualized proof" or otherwise requires the
participation of OBA members.  Indeed, since this case was filed, the Ninth Circuit has
confirmed that for federal savings associations with contracts pre-dating Dodd-Frank, the pre-
emption analysis is even less complicated, as the Office of Trust Supervision occupied the entire
field of state regulation.  *See McShannock v. JPMorgan Chase Bank, NA*, —F.3d—, 2020 WL
5639700, *1-4 & n.3 (9th Cir. 2020).  In those circumstances, all the Court needs to determine is
"whether the type of law in question is listed in paragraph [560.2](b) [of 12 C.F.R.].  If so, the
analysis will end there; the law is preempted."  *Id.* at *5 (citation omitted) (second alteration
added).  12 C.F.R. § 560.2(b) includes state laws "purporting to impose requirements
regarding…[t]he terms of credit, including amortization of loans and the *deferral and
capitalization of interest* and adjustments to the interest rate, balance, *payments due*, or term to
maturity of the loan, including *the circumstances under which a loan may be called due and
payable* upon the passage of time or a specified event external to the loan…Loan related fees,
including without limitation…*late charges*…[and] Disclosure and advertising, including laws
*requiring specific statements, information, or other content to be included in…other credit-
related documents*."  (Emphases added).  On its face HB 4204 is thus preempted.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

1(9) of HB 4204 are preempted in their entirety, and it will do so without needing any—much less *all*—of its members to provide "individualized proof" of particular facts.

Likewise, Plaintiffs' second claim seeks a declaration invalidating the same provisions of HB 4204 because they violate the Contracts Clause of the United States Constitution, and an injunction barring the enforcement of those provisions.  Defendants argue that this claim requires "individualized proof" of three elements: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 117 L. Ed. 2d 328 (1992)).  Here, the challenged provisions prohibit banks from exercising contractual rights in the event borrowers fail to make payments required under their contract.  This provision *only* applies where a contractual relationship exists between a lender and borrower, and in every case it impairs lenders' rights under that contract. *Gen. Motors Corp.*, 503 U.S. at 186 ("Normally, the first two [elements] are unproblematic, and we need address only the third.").  Accordingly, the only issue for the Court to resolve is the legal question of whether prohibiting all lenders from treating nonpayment as a default or from exercising any of their contractual protections or remedies constitutes a "substantial" impairment of their contracts.  *See id.* at 186-87 (elements of claim are questions for the court; for example, the Supreme Court was "bound to decide for ourselves whether a contract was made").  That issue—and all others presented by this claim—can be decided by the Court on a generalized basis without requiring an "ad hoc factual inquiry for each member represented by" OBA.  *See, e.g., Ass'n of Equip. Manufacturers v. Burgum*, 932 F.3d 727, 729 (8th Cir. 2019) (affirming grant of preliminary injunction where trade association showed statute "regulat[ing] relationships between manufacturers and farm equipment dealers" likely impaired manufacturers' contracts in violation of the Contract Clause).

The same is true for Plaintiffs' final claim.  There, Plaintiffs request a declaration that, a as a matter of statutory construction, HB 4204 does not operate retroactively, and an injunction

Page 18 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

preventing retroactive enforcement. Defendants make no attempt to explain how statutory

interpretation could be a "fact-intensive" inquiry requiring the individual participation of each of

OBA's members. Instead, Defendants attack only the alternative relief Plaintiffs seek if

Defendants convince the Court that HB 4204 was intended to operate retroactively to vacate final

state court judgments, invalidate completed foreclosure sales, and authorize private claims for

damages and attorney fees against banks that legally exercised their agreed-upon contractual

rights before the enactment of HB 4204. If the Court concludes that HB 4204 was intended to

operate retroactively, Plaintiffs assert a facial challenge to *all* retroactive application of the

statute under the Due Process and Takings Clauses of the United States Constitution. The only

effects of interpreting HB 4204 to apply retroactively would be to (1) entirely eliminate lenders'

property rights obtained through judgments of foreclosure, foreclosure sales, or other now-

prohibited transactions; and (2) subject lenders to substantial civil liability for assessing late fees

or exercising other contractual remedies *before HB 4204 made it illegal to do so.* Plaintiffs

therefore challenge retroactive application of HB 4204 not in particular instances based on the

individual facts of particular plaintiffs, but in every circumstance in which it could be applied

retroactively.[10] *See Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning*

*Agency*, 365 F. Supp. 2d 1146, 1164 (D. Nev. 2005) (distinguishing between facial takings

claims—where associational standing is permitted—and "as applied" takings claims applying an

"ad hoc, fact-specific" analysis—where individual standing is required) (citing *Pennell v. City of*

*San Jose,* 485 U.S. 1, 6 n.3, 108 S.Ct. 849, 99 L. Ed. 2d 1 (1988) (holding association had

standing to assert facial takings claim)). Defendants fail to explain why the individual

---

[10] If Plaintiffs do not prevail on this alternative facial challenge, the individual plaintiffs—but not OBA or its members—may request leave to amend to assert "as applied" challenges to the retroactive application of the statute. Many of OBA's members will also be forced to bring separate lawsuits asserting "as applied" challenges against Defendants or claims for compensation against the State of Oregon if Defendants convince the Court that HB 4204 applies retroactively.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

participation of OBA's members is necessary to challenge the facially unconstitutional
retroactive application of HB 4204.

Although Defendant cites various cases involving "as applied" challenges where
associational standing was not available, it fails to show how any of those cases are applicable to
the claims asserted or relief sought here. "Outside the limited 'as-applied' context, courts
consistently uphold associational standing in declaratory and injunctive relief cases." *City of S.
Lake Tahoe Retirees Ass'n v. City of S. Lake Tahoe*, 2017 WL 2779013, at *3 (E.D. Cal. June 27,
2017). Defendants primarily rely on *Rent Stabilization Ass'n of City of New York v. Dinkins*,
where a plaintiff association brought an "as applied" takings challenge to a rent stabilization
ordinance that allegedly prevented a subset of landlords covered by the ordinance from receiving
a "just and reasonable return," and then allegedly denied a subset of *those* landlords
"constitutionally adequate relief" under the ordinance's hardship provisions. 5 F.3d at 595. The
court acknowledged that associational standing exists even for "as applied" challenges where
they turn on "purely legal analysis," but concluded that the claim before it would require:

> an *ad hoc* factual inquiry for *each* landlord who alleges that he has
> suffered a taking. We would have to determine the landlord's
> particular return based on a host of individualized financial data,
> and we would have to investigate the reasons for any failure to
> obtain an adequate return, because the Constitution certainly
> cannot be read to guarantee a profit to an inefficient or
> incompetent landlord. Finally, with respect to the RSA's charge
> that the law is administered unconstitutionally, we would have to
> examine the details of each particular instance of poor
> administration.

*Id.* at 596-97 (emphasis in original). None of Plaintiffs' claims here require this type of inquiry.
Even Plaintiffs' Takings Clause challenge—which Defendants attempt to liken to *Dinkins*—
presents a "purely legal" question: does the Takings Clause prevent the State from adopting a
statute that retroactively eliminates every property right to which it applies? No significant
participation by OBA's members' is required to answer this question or any other presented by
this case.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Like *Dinkins*, each "as applied" case cited by Defendants involved claims that would have required *every* affected association member to prove liability based on their unique factual circumstances, and sought relief tailored to those specific individual violations. *See Parent/Prof'l Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13, 35 (1st Cir. 2019) (no standing where association sought to compel school district to provide individualized disability accommodations to "hundreds of children who have not chosen to sue or even to pursue related administrative remedies," had not satisfied statutory exhaustion requirements, and whose right to relief "would turn on facts specific to each student, including unique features of each student's unique disability, needs, services, and placement."); *Free Speech Coal., Inc. v. Attorney Gen. U.S.*, 787 F.3d 142, 154 (3d Cir. 2015) (no standing where associations incorrectly claimed to represent "the adult film industry as a whole," and where First Amendment claim required scrutinizing "the nature of each member's speech" to determine "the degree to which that individual producer's speech is unnecessarily burdened") (internal quotation marks omitted); *Ass'n of Christian Sch. Int'l v. Stearns*, 362 Fed. App'x 640, 644 (9th Cir. 2010) (association had standing to bring facial claim against University of California's policy for determining whether high school courses met admission standards, but not to bring "as applied" claim alleging discrimination against certain rejected courses offered by certain non-party schools, which could be proven only through "individualized proof specific to particular high school courses and the schools that offered them"); *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 171 n.4 (2d Cir. 2001) (association had standing to assert facial challenge, but not "as applied" challenge where it "would plainly require examination of facts specific to each claimant"). Here, Plaintiffs are not asking the Court to design an Individualized Education Plan for each of OBA's members—or even award individualized damages. They seek only generalized declaratory and injunctive relief striking down Subsections 1(3) and 1(9) of HB 4204 in their entirety and barring

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

retroactive application of the statute.  Neither Plaintiffs' claims, nor the relief sought, require OBA's members to participate in this case.[11]

Although OBA does not need to establish that it has associational standing in order for the Court to have jurisdiction over this case, OBA is able to do so.  Defendants' incomplete challenge to this Court's jurisdiction fails, and their motion should be denied.

## V.    CONCLUSION

Plaintiffs do not oppose Defendants' motion to dismiss the State of Oregon from this case.  For the foregoing reasons, all of Defendants' remaining motions fail.

DATED this 13th day of October, 2020.

**DAVIS WRIGHT TREMAINE** LLP


By  s/ Tim Cunningham
    Tim Cunningham, OSB #100906
    timcunningham@dwt.com
    Telephone: (503) 241-2300
    Facsimile: (503) 778-5299

    Attorneys for Plaintiffs

---

[11] Furthermore, OBA also has standing in its own right.  "An organization has standing to sue on its own behalf when it suffers 'both a diversion of its resources and a frustration of its mission.'" *Sierra Club v. Trump*, 963 F.3d 874, 883–86 (9th Cir. 2020) (finding association had standing where defendants' plan to construct a border wall caused association to "devote substantial time to analyze and respond" to plan "at a substantial monetary and opportunity cost," thereby "interfering with" the association's other "core advocacy").  The enactment of HB 4204 has forced OBA to divert substantial resources from its other core functions in order to protect its members' rights and interests through this litigation and government relations efforts.  To the extent OBA needs to amend the Complaint to assert yet another basis for standing, it is prepared to do so.

4844-1110-1643v.11 0116228-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax