# Enrolled
# House Bill 2009

Sponsored by Representatives HOLVEY, KOTEK, Senator BEYER; Representatives DEXTER, FAHEY, GRAYBER, HUDSON, MARSH, NERON, NOSSE, POWER, SANCHEZ, Senators GOLDEN, GORSEK, TAYLOR

CHAPTER .................................................

AN ACT

Relating to strategies to protect Oregonians from the effects of the COVID-19 pandemic; creating new provisions; amending ORS 86.707, 86.726, 86.729, 86.732 and 86.736 and section 2, chapter 4, Oregon Laws 2020 (first special session); and declaring an emergency.

**Be It Enacted by the People of the State of Oregon:**

**SECTION 1.** **(1) The Legislative Assembly finds and declares that:**
**(a) The provisions of this section might affect the terms and conditions of certain contracts into which residents of this state have entered.**
**(b) The effects of the provisions of this section are not substantial because the provisions have a limited scope and duration and are necessary to protect the public health, safety and welfare. For these reasons the provisions do not undermine a contractual bargain, interfere with a party's reasonable expectations or prevent a party from safeguarding or reinstating the party's rights.**
**(c) Even if a provision of this section has the effect of undermining a contractual bargain, interfering with a party's reasonable expectations or preventing a party from safeguarding or reinstating the party's rights, the provision is appropriate and reasonable as a means by which to implement the significant and legitimate public purpose of responding to the COVID-19 pandemic emergency that began on March 8, 2020, and has continued to date.**
**(2) As used in this section:**
**(a) "Borrower" means an individual who directly, or indirectly through an entity, owns a total of not more than five subject properties and is:**
**(A) A mortgagor;**
**(B) A grantor, as defined in ORS 86.705;**
**(C) A purchaser in a land sale contract;**
**(D) A mortgagor, grantor or purchaser who has pledged an interest in subject property as security for a loan to the mortgagor's, grantor's or purchaser's business; or**
**(E) A successor in interest to a person described in subparagraphs (A) to (D) of this paragraph. For the purposes of this subparagraph, "successor in interest" means a person who receives an interest in subject property from a mortgagor, grantor or purchaser under any of the following circumstances:**
**(i) The transfer of subject property occurs by devise, descent or operation of law at the mortgagor's, grantor's or purchaser's death;**

(ii) A relative of the mortgagor, grantor or purchaser receives the interest in subject property as a result of the mortgagor's, grantor's or purchaser's death;

(iii) The spouse or children of the mortgagor, grantor or purchaser become owners of the subject property;

(iv) The transfer results from a decree of dissolution of marriage, a legal separation agreement or an incidental separation agreement under which the spouse of the mortgagor, grantor or purchaser becomes an owner of the subject property; or

(v) The transfer does not relate to rights to occupy the subject property, but the subject property becomes trust property in an inter vivos trust in which the mortgagor, grantor or purchaser remains a beneficiary.

(b) "Emergency period" means a period that extends from 11:59 p.m. on December 31, 2020, to 11:59 p.m. on June 30, 2021, except that the Governor may by executive order:

(A) Not later than June 14, 2021, extend the emergency period to 11:59 p.m. on September 30, 2021; and

(B) Not later than August 16, 2021, extend the emergency period once more to not past 11:59 p.m. on December 31, 2021.

(c) "Financing agreement" means a contract under which a borrower must make payments to a lender to satisfy an obligation that is secured by a mortgage, a trust deed or a land sale contract for subject property.

(d) "Foreclosure avoidance measure" has the meaning given that term in ORS 86.707.

(e) "Forfeiture remedy" has the meaning given that term in ORS 93.905.

(f) "Lender" means a beneficiary, as defined in ORS 86.705, a mortgagee, as defined in ORS 87.005, a seller in a land sale contract or a licensee, as defined in ORS 86A.303.

(g) "Subject property" means real property upon which is situated four or fewer dwelling units, as defined in ORS 90.100, used primarily and designed solely for residential use.

(h) "Trust deed" has the meaning given that term in ORS 86.705.

(i) "Trustee" has the meaning given that term in ORS 86.705.

(3)(a) During the emergency period, a lender may not treat as a default a borrower's failure to make a periodic installment payment or failure to pay any other amount that is due to the lender on or in connection with an obligation that is subject to a financing agreement if, during the emergency period, the borrower notifies the lender that the borrower cannot make the periodic installment payment or other payment because of a loss of income that is related to the COVID-19 pandemic. In lieu of treating the failure to pay as a default, and only if the lender and borrower do not otherwise agree to modify, defer or otherwise mitigate the obligation, including by agreeing to a foreclosure avoidance measure, the lender shall:

(A) Defer, during the emergency period, from collecting the periodic installment payment or other payment; and

(B) Permit the borrower to pay an amount the borrower owes to the lender as a result of a deferral under this subsection at the scheduled or anticipated date on which full performance of the obligation is due, unless the scheduled or anticipated date on which full performance is due is within the emergency period, in which case the lender shall defer payment of the amount until after the emergency period expires.

(b) If the borrower's obligation is a line of credit under which the period in which the borrower may receive advances has not ended, the lender shall defer the amount the borrower owes until the beginning of the repayment period specified in the financing agreement, at which time the lender, in accordance with the terms of the financing agreement, may include the deferred amount in the balance the lender uses to calculate the amount of each payment due during the repayment period unless the repayment period begins during the emergency period, in which case the lender, with an appropriate calculation of the balance, shall defer the amount due until after the emergency period expires.

Exhibit 1

Page 2 of 11

(c) For the purposes of negotiating and agreeing to a foreclosure avoidance measure, a lender may request from the borrower, in addition to the notice described in paragraph (a) of this subsection, information about any hardship or reduction in income that caused the borrower's failure to make a payment. A borrower's failure to provide the information does not disqualify the borrower from obtaining the protections described in paragraph (a) of this subsection.

(d) After an escrow analysis and in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.), a lender may adjust the amount of any escrow impound payment the borrower has an obligation to make under the financing agreement and may take into account any shortage or deficiency that results from deferring payments under this subsection.

(e)(A) Except as provided in subparagraph (B) of this paragraph, a borrower does not need to provide a notice to a lender under paragraph (a) of this subsection more than once. If a borrower provides the notice orally, a lender may request confirmation in writing that the borrower does not own more than five subject properties and that the borrower cannot make a periodic installment payment or other payment because of a loss of income that is related to the COVID-19 pandemic.

(B) A borrower's notice to a lender before the effective date of this 2021 Act is not effective as notice under paragraph (a) of this subsection. The borrower must notify the lender as provided in this subsection to receive the protections described in paragraph (a) of this subsection.

(f) During the emergency period, if a borrower gives notice as provided in paragraph (a) of this subsection, a lender may not:

(A) Impose or collect charges, fees, penalties, attorney fees or other amounts that, but for the provisions of this section, the lender might have imposed or collected from a borrower for failing, during the emergency period, to make a periodic installment payment or to pay another amount due on or in connection with the borrower's obligation;

(B) Impose a default rate of interest that, but for the provisions of this section, the lender might have imposed or collected from a borrower for failing, during the emergency period, to make a periodic installment payment or to pay another amount due on or in connection with the borrower's obligation;

(C) Treat in any manner the borrower's failure during the emergency period to make a periodic installment payment or pay another amount due on or in connection with the obligation as an ineligibility for a foreclosure avoidance measure; or

(D) Require or charge for an inspection, appraisal or broker opinion of value during the emergency period.

(4) Notwithstanding ORS 18.860 to 18.993, 86.752, 88.010 and 93.905 to 93.940, and except as provided in subsection (10) of this section, with respect to subject property, a lender or trustee may not at any time during the emergency period:

(a) Foreclose a trust deed by advertisement and sale;

(b) Bring an action or suit to foreclose a mortgage or trust deed; or

(c) Enforce a forfeiture remedy.

(5)(a) Notwithstanding ORS 18.920, 18.924, 86.764 and 93.915 and except as provided in subsection (10) of this section, if a lender or trustee recorded a notice of default and served a notice of sale for a foreclosure by advertisement and sale, commenced a suit under ORS 88.010 or otherwise initiated a foreclosure with respect to subject property on or after March 8, 2020, the foreclosure is stayed during the emergency period. After the emergency period expires, a trustee's sale may occur if the lender or trustee complies with the provisions of ORS 86.782 (12), a lender may obtain a forfeiture remedy if the lender complies with the provisions of ORS 93.918 and, for other types of foreclosure proceedings, a foreclosure may continue if the lender complies with the requirements of applicable law.

Exhibit 1
Page 3 of 11

(b) Notwithstanding the 180-day limit specified for postponing a trustee's sale set forth in ORS 86.782 (2)(a), a trustee, an attorney for the trustee or an agent that the trustee or attorney designates shall, for the duration of the emergency period, postpone all trustee's sales of subject property with respect to which the trustee, attorney or agent acts in the capacity of a trustee on behalf of a lender.

(6)(a) Notwithstanding ORS 18.860 to 18.993 and 88.010 and except as provided in subsection (10) of this section, during the emergency period a court may not enter a judgment of foreclosure and sale or issue a writ of execution with respect to subject property that secures an obligation on which a mortgagor, a grantor or a purchaser in a land-sale contract has failed to make a periodic installment payment or other payment.

(b) A court shall dismiss without prejudice any action or suit commenced during the emergency period that seeks to foreclose a lien upon subject property.

(7)(a) Notwithstanding ORS 86.782 and except as provided in subsection (10) of this section, a trustee's sale of subject property may not occur during the emergency period. Any purported trustee's sale of subject property during the emergency period is void and does not transfer or foreclose any rights to the subject property.

(b) Notwithstanding ORS 18.860 to 18.993 and except as provided in subsection (10) of this section, an execution sale of subject property that secures an obligation on which a mortgagor, grantor or purchaser in a land sale contract has defaulted may not occur during the emergency period. Any purported execution sale of subject property during the emergency period is void and does not transfer or foreclose any rights to the subject property.

(8)(a) Except as provided in paragraph (b) of this subsection, a borrower that suffers an ascertainable loss of moneys or property because a lender or trustee took an action prohibited under this section may bring an action in a circuit court of this state to recover the borrower's actual damages. A borrower who prevails in the action may also recover the borrower's court costs and attorney fees.

(b) A lender or trustee is not liable to a borrower for damages under paragraph (a) of this subsection if:

(A) The lender's or trustee's action violated the prohibitions set forth in subsection (3)(a) or (f) of this section, but the action occurred before the lender received a notice from the borrower under subsection (3)(a) of this section; or

(B) The lender sent to the borrower a periodic statement, billing notice or other communication that appeared to seek payment for an obligation the lender deferred in compliance with subsection (3) of this section, if:

(i) The communication resulted from a bona fide clerical error, an error in calculation, a computer malfunction, a printing error or a genuine incapacity in the lender's billing system to provide a correct and current notice of the amount of the borrower's obligation despite the lender having maintained procedures reasonably adapted to avoid the error or after having determined in good faith that a commercially reasonable method for overcoming the incapacity does not exist;

(ii) The lender does not attempt any substantive action to collect any amount the lender deferred in compliance with subsection (3) of this section; and

(iii) The lender confirms in writing that the amount shown in the communication as due remains deferred.

(9)(a) Each lender shall notify all of the lender's borrowers who cannot make a periodic installment payment or other payment on an obligation because of a loss of income related to the COVID-19 pandemic that the borrowers may be entitled to relief under this section. The notice must state that the borrower must provide notice under subsection (3)(a) of this section even if the borrower has provided notice previously and must include the following text:

If you have experienced a loss of income related to the COVID-19 pandemic, Oregon law allows you to place your mortgage loan in forbearance until June 30, 2021, or later if the law is extended, and defer the missed payments until the end of the loan term. Forbearance is not automatic. You must notify us that you have a hardship to qualify for the forbearance. If you notified us before (the effective date of this 2021 Act), you must notify us again if your hardship has continued and you cannot make payments due on your mortgage loan. Contact us at (contact information) for further information and to request a forbearance. If you have a federally backed mortgage loan, you might also be eligible for forbearance under the federal CARES Act. Please contact us for questions or to request either forbearance option.

(b) A lender complies with paragraph (a) of this subsection if the lender notifies by mail:

(A) All of the lender's borrowers within 60 days after the effective date of this 2021 Act; or

(B) Every borrower who fails to make a periodic installment payment or other payment in connection with the borrower's obligation within 30 days after the borrower fails to make the payment.

(10) This section does not:

(a) Apply to judgments of foreclosure and sale, writs of execution, notices of a trustee's sale or forfeitures under land sale contracts:

(A) Under which a trustee's sale or execution sale concluded, or an affidavit of forfeiture was recorded, before June 30, 2020;

(B) That occur in connection with a tax foreclosure proceeding under ORS 312.010 to 312.120 or 312.130 to 312.240;

(C) That dispose of vacant or abandoned property; or

(D) That result from a borrower's waste, destruction or illegal use of subject property or the borrower's failure to prevent another person's waste, destruction or illegal use of the subject property; or

(b) Relieve a borrower of the duty to repay the full amount of any obligation that is subject to a waiver, deferral, modification or forbearance under the provisions of this section.

**SECTION 2.** Section 2, chapter 4, Oregon Laws 2020 (first special session), is amended to read:

**Sec. 2.** Section 1 [*of this 2020 special session Act*]**, chapter 4, Oregon Laws 2020 (first special session),** is repealed [*90 days after the expiration of the emergency period as defined in section 1 of this 2020 special session Act*] **on the effective date of this 2021 Act**.

**SECTION 3.** ORS 86.707 is amended to read:

86.707. As used in this section and ORS 86.726, 86.729, 86.732, 86.736, 86.741, 86.744 and 86.748:

(1) "Facilitator" means a person that a service provider selects to conduct a resolution conference.

(2) "Foreclosure avoidance measure" means an agreement between a beneficiary and a grantor that uses one or more of the following methods to modify an obligation that is secured by a residential trust deed:

(a) The beneficiary defers or forbears from collecting one or more payments due on the obligation.

(b) The beneficiary modifies, temporarily or permanently, the payment terms or other terms of the obligation.

(c) The beneficiary accepts a deed in lieu of foreclosure from the grantor.

(d) The grantor conducts a short sale.

(e) The beneficiary provides the grantor with other assistance that enables the grantor to avoid a foreclosure.

(3) "Housing counselor" means a counselor employed by a nonprofit housing counseling agency that the Housing and Community Services Department or a successor state agency approves.

Exhibit 1
Page 5 of 11

**(4)** "Remote audio or video communication" means a method of remote communication that gives a participant in the communication the capability and opportunity to clearly transmit and, as appropriate, perceive at substantially the same time the participant's own, and other participants', spoken or sign language, visual or audio aids, gestures, expressions, tones of voice and other indicators of meaning apart from spoken or written language.

[*(4)*] **(5)** "Resolution conference" means a meeting at which a grantor and a beneficiary attempt to negotiate and agree upon a foreclosure avoidance measure.

[*(5)*] **(6)** "Service provider" means a person that the Attorney General appoints under ORS 86.741 to coordinate a program to implement the provisions of ORS 86.726, 86.729, 86.732 and 86.736.

**SECTION 4.** ORS 86.726 is amended to read:

86.726. (1)(a) Except as provided in paragraph (b) of this subsection and subsection (5) of this section, a beneficiary that intends to foreclose a residential trust deed shall first request a resolution conference with the grantor before the beneficiary or the trustee files a notice of default under ORS 86.752 or before the beneficiary brings suit under ORS 88.010.

(b)(A) The requirement to request or participate in a resolution conference with a grantor in accordance with subsection (2) or (3) of this section does not apply to a beneficiary if the beneficiary submits to the Attorney General a sworn affidavit that states that during the preceding calendar year the beneficiary did not commence or cause an affiliate, subsidiary or agent of the beneficiary to commence more than [*175*] **30** actions to foreclose a residential trust deed by advertisement and sale under ORS 86.752 or by suit under ORS 88.010. A beneficiary that is a trustee shall include as part of the total number of foreclosure actions that the beneficiary commenced in the previous calendar year all foreclosure actions that the beneficiary commenced under ORS 86.752 or 88.010 in the beneficiary's capacity as a trustee. A beneficiary that intends to claim an exemption under this subparagraph shall submit the affidavit in a form and with the contents the Attorney General specifies by rule either:

(i) Not later than January 31 in any calendar year in which the beneficiary intends to claim the exemption for the remainder of the calendar year; or

(ii) At the time the beneficiary files a notice of default under ORS 86.752 or brings suit under ORS 88.010.

(B) An exemption under subparagraph (A) of this paragraph expires at the end of the calendar year in which the beneficiary claims the exemption.

(c) Except as provided in subsection (5) of this section, a beneficiary that claims an exemption under this subsection is not exempt from the requirements set forth in ORS 86.748.

(2) The beneficiary shall request a resolution conference through the service provider. The beneficiary shall submit the request to the service provider electronically, by facsimile or by mail and shall submit a processing fee in an amount and in a manner that the Attorney General specifies by rule. The service provider shall pay to the Attorney General, for deposit into the Foreclosure Avoidance Fund established under ORS 86.744, moneys the service provider receives from the beneficiary under this subsection. The beneficiary's request under this subsection must identify the residential trust deed that the beneficiary intends to foreclose and list the name, title, address, telephone number and other available contact information for:

(a) The beneficiary;

(b) Any agent of the beneficiary that will attend the resolution conference;

(c) Any person other than a person identified in paragraph (a) or (b) of this subsection that will receive, on the beneficiary's behalf, notices or other communications related to the resolution conference; and

(d) The grantor.

(3)(a) If a beneficiary does not request a resolution conference under subsection (1) of this section, a grantor may request a resolution conference with the beneficiary if:

(A) The beneficiary or the trustee has not filed a notice of default under ORS 86.752 or the beneficiary has not commenced a suit under ORS 88.010; and

Exhibit 1
Page 6 of 11

(B) The grantor first obtains from a housing counselor a certification in writing that the grantor is more than 30 days in default on the obligation that the residential trust deed secures or, if the grantor is not in default, that the grantor has a financial hardship that the housing counselor believes may qualify the grantor for a foreclosure avoidance measure.

(b) A grantor shall request a resolution conference through the service provider. The grantor shall submit the request to the service provider electronically, by facsimile or by mail and shall enclose with the request the written certification the housing counselor provides under paragraph (a)(B) of this subsection. The Attorney General by rule shall specify the information that the request must include.

(c) A beneficiary that receives a notice from a service provider after the service provider receives a request from a grantor under paragraph (b) of this subsection is subject to the requirements set forth in this section and ORS 86.729, 86.732, 86.736 and 86.748.

(d) This subsection does not apply to a beneficiary that has submitted an affidavit and is exempt under subsection (1)(b) of this section.

(4) A beneficiary that submitted an affidavit in accordance with subsection (1)(b) of this section may, without waiving the exemption the beneficiary claimed in the affidavit, request a resolution conference with a grantor. The beneficiary shall submit a request under this subsection in accordance with the requirements set forth in subsection (2) of this section, except that submitting the request does not require a processing fee.

(5) The requirement to request or participate in a resolution conference with a grantor in accordance with subsection (2) or (3) of this section does not apply to the Department of Veterans' Affairs in its capacity as a beneficiary of loans made under ORS 407.125.

**SECTION 5. Section 6 of this 2021 Act is added to and made a part of ORS 86.705 to 86.815.**

**SECTION 6. (1) A beneficiary that submits a sworn affidavit to the Attorney General under ORS 86.726 (1)(b)(A) during the calendar year 2021 or 2022 shall make the statement required in the affidavit on the basis of the beneficiary's actions, or the actions of the beneficiary's affiliate, subsidiary or agent, to foreclose a residential trust deed by advertisement and sale under ORS 86.752 or by suit under ORS 88.010 during the calendar year 2019.**

**(2) A beneficiary may not during calendar year 2021 or 2022 submit an affidavit to the Attorney General and does not qualify for an exemption from the requirement to participate in a resolution conference if the beneficiary, or the beneficiary's affiliate, subsidiary or agent, during the calendar year 2019 commenced more than 30 actions to foreclose a residential trust deed by advertisement and sale under ORS 86.752 or by suit under ORS 88.010, notwithstanding the qualification established for the exemption in ORS 86.726 (1)(b)(A), as in effect before the effective date of this 2021 Act. Any affidavit that a beneficiary submitted on or after January 1, 2021, and before the effective date of this 2021 Act that under this subsection does not qualify the beneficiary for an exemption is without effect and the beneficiary is subject to the requirements of ORS 86.726, 86.729, 86.732, 86.736 and 86.748 during the calendar year 2021.**

**SECTION 7. Section 6 of this 2021 Act is repealed on January 2, 2024.**

**SECTION 8.** ORS 86.732 is amended to read:

86.732. (1)(a) Except as provided in paragraph (b) of this subsection, a beneficiary that must request a resolution conference with a grantor under ORS 86.726 shall attend and participate in the resolution conference in person **or by remote audio or video communication**.

(b)(A) A beneficiary may send an agent to the resolution conference if the agent attends the resolution conference in person **or by remote audio or video communication** and **the agent** has complete authority to negotiate on the beneficiary's behalf and commit the beneficiary to a foreclosure avoidance measure or, if the agent who attends the resolution conference in person **or by remote audio or video communication** does not have complete authority, the beneficiary also requires the participation, by remote **audio or video** communication, of a person who does have

complete authority to negotiate on the beneficiary's behalf and commit the beneficiary to a foreclosure avoidance measure.

(B) A grantor may have an attorney or a housing counselor, or both, present to represent the grantor at the resolution conference, but the grantor, or any individual that a court appoints to act on the grantor's behalf, must attend the resolution conference in person **or by remote audio or video communication** [*unless there are compelling circumstances that prevent attendance in person*].

(2) If the beneficiary agrees to a foreclosure avoidance measure with the grantor, the beneficiary and the grantor shall sign a written document that sets forth the terms of the foreclosure avoidance measure.

(3) A facilitator may suspend or postpone a resolution conference after the resolution conference has begun:

(a) One time only on the facilitator's initiative or in response to a request for a suspension or postponement from the beneficiary or the grantor;

(b) After a suspension or postponement under paragraph (a) of this subsection only if the beneficiary and the grantor agree to the additional suspension or postponement; or

(c) If the beneficiary or the grantor needs additional time to write or sign a document that sets forth the terms of a foreclosure avoidance measure.

(4) After the resolution conference concludes, the facilitator shall submit to the service provider a written report that:

(a) Lists the date or dates on which the resolution conference occurred;

(b) Lists the name, title, address, telephone number and other available contact information for each person that participated in the resolution conference, noting whether the person attended the resolution conference in person or participated by remote **audio or video** communication;

(c) States whether the beneficiary or the agent of the beneficiary who attended the resolution conference had complete authority to negotiate and commit to a foreclosure avoidance measure;

(d) Summarizes the terms of the foreclosure avoidance measure to which the beneficiary and the grantor agreed or notes that the beneficiary and the grantor did not agree to a foreclosure avoidance measure; and

(e) Provides any other information the Attorney General requires by rule.

**SECTION 9.** ORS 86.729 is amended to read:

86.729. (1)(a) Within 10 days after a service provider receives a request for a resolution conference under ORS 86.726, the service provider shall schedule the resolution conference and mail a notice to the beneficiary and to the grantor at all addresses on file with the service provider for the beneficiary and grantor, including post office boxes. The service provider shall schedule the resolution conference to occur within 75 days after the date on which the service provider sends the notice.

(b) A notice under this subsection must:

(A) Specify a range of dates within which and a location at which **or means of remote audio or video communication by which** the resolution conference will occur;

(B) State that the beneficiary and the grantor each must pay the facilitator's fees for the resolution conference;

(C) List and describe the documents that the beneficiary and the grantor must submit to the service provider;

(D) State that the grantor must consult a housing counselor before attending the resolution conference unless the grantor notifies the service provider that the grantor could not obtain an appointment with a housing counselor before the date of the resolution conference;

(E) State that the grantor may have an attorney or housing counselor present to represent the grantor at the resolution conference, and that the attorney or housing counselor must attend the resolution conference in person **or by remote audio or video communication** [*unless there are compelling circumstances that prevent attendance in person*]; and

(F) Include any other information the Attorney General requires by rule.

Exhibit 1
Page 8 of 11

(2) Within 25 days after the date on which the service provider sends a notice under subsection (1) of this section:

(a) The grantor shall pay a fee to the service provider in an amount and in a manner that the Attorney General specifies by rule. The grantor's fee may not exceed $200. Within five days after receiving the fee from the grantor, the service provider shall send a written notice to the grantor and the beneficiary that specifies the date, time and location of**, and, if necessary, a method of remote audio or video communication for,** the resolution conference.

(b) The service provider shall pay to the Attorney General, for deposit into the Foreclosure Avoidance Fund established under ORS 86.744, moneys the service provider receives from the grantor under paragraph (a) of this subsection.

(c) The grantor shall submit to the service provider:

(A) Information about the grantor's income, expenses, debts and other obligations;

(B) A description of the grantor's financial hardship, if any;

(C) Documents that verify the grantor's income; and

(D) Any other information the Attorney General requires by rule.

(3) The grantor shall consult a housing counselor before attending the resolution conference unless the grantor cannot obtain an appointment with a housing counselor before the date of the resolution conference.

(4) Within 25 days after the service provider makes the information the grantor submitted under subsection (2) of this section available to the beneficiary, the beneficiary shall:

(a) Pay a fee to the service provider in an amount that is not more than $600 and in a manner that the Attorney General specifies by rule. The service provider shall pay to the Attorney General, for deposit into the Foreclosure Avoidance Fund established under ORS 86.744, moneys the service provider receives from the beneficiary under this paragraph.

(b) Submit to the service provider:

(A) Copies of:

(i) The residential trust deed; and

(ii) The promissory note that is evidence of the obligation that the residential trust deed secures and that the beneficiary or beneficiary's agent certifies is a true copy;

(B) The name and address of the person that owns the obligation that is secured by the residential trust deed;

(C) A record of the grantor's payment history for the longer of the preceding 12 months or since the beneficiary last deemed the grantor current on the obligation;

(D) An itemized statement that shows:

(i) The amount the grantor owes on the obligation, itemized to reflect the principal, interest, fees, charges and any other amounts included within the obligation; and

(ii) The amount the grantor must pay to cure the grantor's default;

(E) A document that identifies:

(i) The input values for each net present value model that the beneficiary or the beneficiary's agent uses; and

(ii) The output values that each net present value model produces;

(F) The appraisal or price opinion the beneficiary relied on most recently to determine the value of the property that is the subject of the residential trust deed;

(G) The portion of any pooling agreement, servicing agreement or other agreement that the beneficiary cites as a limitation or prohibition on modifying the terms of the obligation, together with a statement that describes the extent to which the beneficiary sought to have the limitation or prohibition waived;

(H) A description of any additional documents the beneficiary requires to evaluate the grantor's eligibility for a foreclosure avoidance measure; and

(I) Any other information the Attorney General requires by rule.

(5)(a) The service provider may postpone or reschedule a resolution conference that the service provider scheduled under subsection (1) of this section if:

Exhibit 1
Page 9 of 11

(A) The beneficiary and the grantor agree to a new date;

(B) The beneficiary or the grantor requests a new date in writing that is not more than 30 days after the original date scheduled for the resolution conference and can show good cause for the request; or

(C) The beneficiary does not pay the fee required under subsection (4)(a) of this section by the date the fee is due. The service provider may wait until the beneficiary has paid the fee before rescheduling the resolution conference.

(b) The service provider shall cancel a resolution conference that the service provider scheduled under subsection (1) of this section if the grantor does not pay the fee required under subsection (2)(a) of this section by the date the fee is due.

(6)(a) A resolution conference conducted in accordance with this section and ORS 86.726, 86.732 and 86.736 is not subject to ORS chapter 36 and does not preclude mediation that a court or another provision of law requires.

(b) A facilitator is not subject to a subpoena and cannot be compelled to testify in any proceeding that is related to a resolution conference, other than a proceeding against a facilitator for an act or omission for which the facilitator may be liable under paragraph (c) of this subsection.

(c) A facilitator is not civilly liable for any act or omission done or made while engaged in efforts to assist or facilitate a resolution conference unless the facilitator acted or made an omission in bad faith, with malicious intent or in an manner that exhibited a willful or wanton disregard of the rights, safety or property of another person.

(d) The limitations on liability provided by this subsection apply to the officers, directors, employees and agents of the service provider and any dispute resolution program engaged in facilitating resolution conferences.

(e) Information that a beneficiary or grantor submits under this section is not subject to ORS 192.311 to 192.478.

**SECTION 10.** ORS 86.736 is amended to read:

86.736. (1)(a) The service provider shall issue, within five days after receiving a report from a facilitator under ORS 86.732 (4), a certificate of compliance to a beneficiary that:

(A) Complied with ORS 86.726, 86.729 and 86.732;

(B) Submitted the materials required under ORS 86.729 (4) to the service provider;

(C) Appeared in person **or by remote audio or video communication** at, or sent an agent in person **or by remote audio or video communication** to, the resolution conference with complete authority to negotiate on the beneficiary's behalf and commit the beneficiary to a foreclosure avoidance measure or, if the beneficiary or agent did not have complete authority, required the participation by remote **audio or video** communication of a person with complete authority to negotiate on the beneficiary's behalf and commit the beneficiary to a foreclosure avoidance measure; and

(D) Signed a document that sets forth the terms of any foreclosure avoidance measure to which the beneficiary and the grantor agreed.

(b) A certificate of compliance expires one year after the date on which the service provider issues the certificate of compliance under paragraph (a) of this subsection.

(c) The service provider shall notify a beneficiary that failed to meet a requirement to which the beneficiary was subject under ORS 86.726, 86.729 or 86.732 that the service provider will not issue a certificate of compliance, explaining in the notice why the service provider will not issue the certificate of compliance. The service provider shall provide a copy of the notice under this paragraph to the grantor and to the Attorney General.

(2) Notwithstanding the requirements set forth in subsection (1) of this section, if a service provider cancels a resolution conference under ORS 86.729 (5)(b), the service provider shall issue a certificate of compliance to the beneficiary within five days after canceling the resolution conference.

**SECTION 11. Section 1 of this 2021 Act applies to actions that a lender takes with respect to a borrower's failure on and after December 31, 2020, to make a required periodic install-**

Exhibit 1
Page 10 of 11

ment payment or other payment on an obligation and to a lender's or trustee's action on and after December 31, 2020, to foreclose a mortgage or trust deed by advertisement and sale or by suit or to enforce a forfeiture remedy with respect to a land sale contract.

<u>SECTION 12.</u> Section 1 of this 2021 Act is repealed 90 days after the expiration of the emergency period as defined in section 1 of this 2021 Act.

<u>SECTION 13.</u> This 2021 Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this 2021 Act takes effect on its passage.

———————

**Passed by House April 6, 2021**

**Repassed by House May 19, 2021**

................................................................
Timothy G. Sekerak, Chief Clerk of House

................................................................
Tina Kotek, Speaker of House

**Passed by Senate May 17, 2021**

................................................................
Peter Courtney, President of Senate

**Received by Governor:**

........................M.,........................................., 2021

**Approved:**

........................M.,........................................., 2021

................................................................
Kate Brown, Governor

**Filed in Office of Secretary of State:**

........................M.,........................................., 2021

................................................................
Shemia Fagan, Secretary of State

Exhibit 1
Page 11 of 11